**UNITED STATES of America**

v.

**Angel ORTIZ, Appellant.**

**No. 89–1056.**

United States Court of Appeals,
Third Circuit.
Submitted Under Third Circuit Rule 12(6)
June 28, 1989.

June 29, 1989.

Edward F. Borden, Jr., Philadelphia, Pa., for appellant.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Paul L. Gray, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before MANSMANN, SCIRICA and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge

Angel Ortiz appeals from a judgment of sentence. The district court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

## I.

Angel Ortiz was charged in a five-count indictment with various offenses related to a single cocaine distribution that occurred on August 3, 1988. He pled guilty to four counts, and subsequently the prosecutor moved to dismiss the final count. The district judge applied the sentencing guidelines and imposed a sentence of 235 months (19 years, 7 months). Ortiz argues that the district court misapplied the sentencing guidelines.

## II.

The "Aggravating Role" guidelines instruct the district court that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants ... increase [the offense level] by four levels." Sentencing Guidelines § 3B1.1(a). They further instruct that "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants ... increase [the offense level] by three levels." Sentencing Guidelines § 3B1.1(b). The district court found that Ortiz was an "organizer or leader" and increased his offense level by four levels. Ortiz argues that, given its factual findings, the district court should not have found him to be an organizer or leader under the guidelines, but merely a "manager or supervisor." He does not dispute that there were five or more persons involved in the criminal activity.

## A.

We first address the appropriate standard of review, a question not squarely decided before in this Circuit. Cf. United States v. Ofchinick, 877 F.2d 251 (3d Cir.1989). As amended on November 18, 1988, title 18 U.S.C. Section 3742(e) states that "[t]he court of appeals ... shall give due deference to the district court's application of the guidelines to the facts." We are required to determine the meaning of this "due deference" standard.[1]

The legislative history of the amendment adopting the due deference standard states: "[t]his standard is intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity. The deference due a district court's determination will depend upon the relationship of the facts found to the guidelines standard being applied. If the particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test. As the determination approaches a purely legal determination, however, the court of appeals would review the determination more closely." 134 Cong. Rec. H11257 (daily ed. Oct. 21, 1988) (statement of Rep. Conyers) (Section–By–Section Analysis of Sentencing Amendments included in Title VII, Subtitle C of the Anti–Drug Abuse Act of 1988).

As two courts of appeals have recognized, the application of the guidelines can present a mixed question of law and fact. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989); United States v. Wright, 873 F.2d 437 (1st Cir.1989). That is certainly the case with the applications at issue here. The standard of review articulated in the legislative history is close—if not identical—to "the standard courts have long employed when reviewing mixed questions of fact and law," Daughtrey, 874 F.2d at 217. In reviewing a district court's determination where a mixed question "is 'essentially factual,' ... the concerns of judicial administration will favor the district court, and the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to

---

**1.** Because the standard of review that we ultimately conclude is appropriate in this appeal is identical to that which we would have employed even in the absence of this amendment, we need not address the possibility that the application of the amendment to a crime committed before its enactment might implicate the prohibition on *ex post facto* laws contained in Article I, § 9, cl. 3 of the United States Constitution. *See Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) ("to fall within the *ex post facto* prohibition ... the law ... must disadvantage the offender affected by it") (citation omitted) (internal quotation marks omitted).

exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo." *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc) (quoting *Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982)), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Because we conclude that the question of a defendant's aggravating role in this crime is "essentially factual," we will reverse the district court in this case only if its conclusion is clearly erroneous. We need not resolve precisely how closely a district court's determination must be scrutinized as it approaches the purely "legal." It suffices to say that given the statutory language we are to apply, movement from the entirely factual toward the entirely legal will intensify the delicacy of the process.

### B.

The commentary to the guidelines states that "[i]n distinguishing a leadership and organizational role from one of mere management or supervision.... [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." Sentencing Guidelines § 3B1.1 commentary.[2]

The district court adopted the findings appearing in the presentence report. The court concluded that Ortiz performed the role of a principal in the transaction. It found that Ortiz made the decision regarding the place, the quantity and the price to be paid for the cocaine. It found that he gave directions to some of the others involved in the transaction, and that he directed his son Bobby Luis Ortiz to act as a lookout. The district court further found that Ortiz directed that the transaction and the actual exchange take place in his van, although he was not present in the van when the transaction took place. The court also concluded that he helped recruit at least two of the accomplices, his son and Gilberto Hernandez. Ortiz does not contest any of these findings of fact before us.

The defendant first argues that the "scope of the illegal activity" was quite narrow, because it was only a single transaction. The commentary refers, however, not merely to "scope," but to the "scope and nature" of the illegal activity. This single purchase of four kilograms of cocaine represents a substantial quantity of cocaine. Even if we concede that the scope of this crime was narrow, in nature, as the district court found, this was "a serious, serious offense."

Ortiz next argues that there was no evidence concerning the size of the share of the fruits of the crime, and that his degree of control and authority exercised over others was minimal. The commentary to the guidelines of course is intended only to suggest various factors to be weighed. Indeed it purports only to list "factors the court should consider." There need not be evidence of every factor before a defendant is found to be a "leader or organizer."

Lastly, Ortiz argues that his participation was secondary to that of Enrique Lopez, one of the co-defendants. The commentary to the guidelines states "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association." Sentencing Guidelines § 3B1.1 commentary. "Organizer or leader" is not an appellation necessarily reserved for only the participant most involved in the commission of the crime.

Given the facts found by the district court, we conclude that its finding that Ortiz was an organizer or leader within the meaning of the guidelines was not clearly erroneous.

---

2. Commentary to a guideline section "may interpret the guideline or explain how it is to be applied." Sentencing Guidelines § 1B1.7. We may "treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter." Sentencing Guidelines § 1B1.7 commentary.

### III.

The sentencing guidelines also provide for a two-level reduction in offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility." *See* Sentencing Guidelines § 3E1.1(a). This question, too, is essentially factual and under the due deference standard compelled by title 18 U.S.C. Section 3742(e), we will overturn the conclusion of the district court only if it is clearly erroneous. This interpretation is consistent with the Sentencing Commission's commentary to the guidelines—adopted, of course, prior to the congressional enactment of the due deference standard—which states that "[t]he determination of the sentencing judge [concerning acceptance of responsibility] is entitled to great deference on review and should not be disturbed unless it is without foundation." Sentencing Guidelines § 3E1.1(a) commentary.[3]

The guidelines state that "[a] defendant who enters a guilty plea is not entitled to a sentencing reduction ... as a matter of right." Sentencing Guidelines § 3E1.1(c). The commentary to the guidelines further states that "a guilty plea may provide some evidence of the defendant's acceptance of responsibility." Sentencing Guidelines § 3E1.1 commentary. We reject Ortiz's contention that on the basis of these statements, "a guilty plea should be deemed to raise a presumption of entitlement to the acceptance of responsibility offense level reduction." We conclude that the district court did not err by failing to employ such a presumption.

Ortiz next contends that, in any event, the district court's finding that he had not accepted personal responsibility was in error. Ortiz argues that his entry of a guilty plea, his guilty plea colloquy, and his waiver of all procedural rights, all without a plea bargain, demonstrate his acceptance of responsibility. He contends that the district court incorrectly denied him a two-level reduction in offense level

for acceptance of responsibility under the guidelines.

In this case, the district court found that Ortiz's version of his criminal involvement —as conveyed to the probation officer and reflected in Ortiz's presentence report—attempted to minimize his role in this transaction. The district court found that "he simply hasn't accepted the role that the physical, the tangible, the unquestioned facts demonstrate that he held here." The evidence to which Ortiz points is not sufficient to meet his burden of demonstrating that the district court's finding was clearly erroneous.

### IV.

Consequently, the judgment of sentence will be affirmed.

---

**3.** Our conclusion about the appropriate standard of review is based on 18 U.S.C. § 3742. We therefore have no occasion to comment on the propriety of the Sentencing Commission addressing its commentary to the court of appeals. *See* 28 U.S.C. § 994(a).