**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph Neal ROBERTS,**
**Defendant–Appellant.**

**No. 88–2125.**

United States Court of Appeals,
Tenth Circuit.

March 15, 1990.

Frederic Stephens, Asst. U.S. Atty. (Michael J. Norton, Acting U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

Janine Yunker, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colo., for defendant-appellant.

Before SEYMOUR, HENLEY * and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Joseph Neal Roberts pled guilty to an information alleging one count of assault with intent to commit a felony within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(b) (1988). He was sentenced to forty-one months in prison followed by two years of supervised release. Although Roberts does not challenge his conviction on appeal, he raises four arguments with respect to the sentence imposed.[1] We affirm the sentence.

## I.

Roberts' plea agreement contains a stipulation concerning the circumstances of the offense, and it establishes the following facts. The victim, Kimberly Peters, was in the process of withdrawing money from an automatic teller machine at Fort Carson, Colorado, when Roberts came up behind her. Holding a knife in his right hand, he put his right arm around her neck and demanded money. Peters gave him fifty dollars. Roberts then used Peters' bank card to withdraw an additional thirty dollars and fled. Several days later Roberts and his girlfriend went to the authorities at Fort Carson and Roberts confessed to the crime.

Roberts was originally indicted on a charge of robbery by force, violence, or intimidation in violation of 18 U.S.C. § 2111 (1988), which provides a maximum imprisonment of fifteen years. As part of the plea agreement, Roberts waived his right to indictment and pled guilty to an information charging a violation of section 113(b), which provides a maximum imprisonment of ten years. The Government moved to dismiss the indictment charging robbery.

## II.

The guidelines promulgated under the Sentencing Reform Act integrate offense behavior and offender characteristics, providing "guideline ranges that specify an appropriate sentence for each class of convicted persons, to be determined by coordinating the offense behavior categories with the offender characteristic categories." United States Sentencing Commission, *Guidelines Manual* (hereinafter Guidelines), Ch. 1, Part A, Introduction 2 (Nov. 1989); *see generally United States v. Thomas*, 884 F.2d 540, 541 n. 2 (10th Cir. 1989). A sentencing court begins this process by determining the applicable offense conduct guideline. *See* Guidelines § 1B1.1(a). This determination usually is made by assessing the guideline most applicable to the offense of which the offender has been convicted. However, if the offender has been convicted pursuant to a guilty plea "containing a stipulation that specifically establishes a more serious offense than the offense of conviction," the court is to select the offense guideline most

---

* Honorable J. Smith Henley, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The offense occurred on November 16, 1987. Roberts' sentence is therefore governed by the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551 *et seq.* (1988), which became effective on November 1, 1987. *See* Pub.L. No. 98–473, § 235, 98 Stat.1988, 2031, as amended by Pub.L. No. 99–217, § 2, § 4, 99 Stat. 1728; Pub.L. No. 99–646, § 35, 100 Stat. 3599; Pub.L. No. 100–182, § 2, 101 Stat. 1266 (printed as note to 18 U.S.C. § 3551 (1988)).

applicable to the stipulated, more serious offense. *Id.* § 1B1.2(a). After determining the base offense level, the court adjusts for appropriate specific offense characteristics, makes other appropriate adjustments as provided in the guidelines, determines the offender's criminal history, and selects the guideline range that corresponds to the offense level and criminal history after all the appropriate specific adjustments have been made. *See generally id.* § 1B1.1; *Thomas,* 884 F.2d at 541 n. 2.

In this case, the district court determined that the proviso of section 1B1.2(a) was applicable because the plea stipulation established that Roberts' conduct constituted the more serious crime of robbery, although he was convicted of assault with intent to commit a felony. Robbery is governed by section 2B3.1, which provides a base offense level of twenty and sets out specific offense characteristics under which the base level is increased. The specific offense characteristics of robbery relevant to the instant appeal are described in section 2B3.1(b)(2), which states:

"(A) If a firearm was discharged, increase by 5 levels; (B) if a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels; (C) if a dangerous weapon (including a firearm) was brandished, displayed, or possessed, increase by 3 levels; or (D) if an express threat of death was made, increase by 2 levels."

The court here determined that Roberts had "otherwise used" a knife, and accordingly increased his base offense level by four.

The guidelines also provide for more general offense-related adjustments that may apply to a wide variety of offenses. Section 3A1.3 states that the court is to increase the base offense level by two if the court determines that "a victim was physically restrained in the course of the offense." The district court found this provision to be applicable and raised Roberts' offense level accordingly. The court then decreased the level by two pursuant to section 3E1.1(a) upon determining that Roberts had accepted responsibility for his criminal conduct. Roberts' resulting offense conduct level was twenty-two, which together with his criminal history level of I resulted in a guideline range of forty-one to fifty-one months.

## III.

■ On appeal, Roberts contends that the proviso of section 1B1.2(a), under which the court uses the offense level of the stipulated conduct when it is more serious than the offense of conviction, is unconstitutionally vague because it does not define "more serious offense" nor does it adequately set out criteria for determining the relative seriousness of offenses. Roberts argues alternatively that the district court erred 1) by applying the robbery guideline instead of the one for aggravated assault; 2) by determining that Roberts used a knife rather than merely brandishing one; and 3) by holding that Roberts physically restrained the victim.

### A.

We find no merit in Roberts' claim that the proviso of section 1B1.2(a) is impermissibly vague with respect to the term "more serious offense." A vague standard offends due process because it permits arbitrary and discriminatory enforcement by failing to provide explicit standards for its application. *See Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). A standard therefore is unconstitutionally vague if people "'of common intelligence must necessarily guess at its menaing.'" *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971) (quoting *Connolly v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)).

The guidelines provide a clear means by which the relative seriousness of offenses encompassed by stipulated conduct can be evaluated for purposes of sentencing, the purpose with which we are here concerned. Each offense is assigned a base offense level; the higher the level, the greater the resulting term of imprisonment. Since the length of imprisonment necessarily reflects

the guidelines' assessment of the seriousness of the crime, the degree of seriousness can be ranked by comparing each crime's base offense level. Robbery, which is given a base offense level of twenty, is thus assessed as a "more serious offense" than aggravated assault, which is given a base offense level of fifteen. Accordingly, we conclude that section 1B1.2(a) is not void for vagueness.

### B.

Before we address Roberts' remaining arguments, we must determine the appropriate standard of review. Congress has provided for appellate review of the application of sentencing guidelines to the facts as follows:

> "Upon review of the record, *the court of appeals shall determine whether the sentence*—
> (1) was imposed in violation of law;
> (2) *was imposed as a result of an incorrect application of the sentencing guidelines;*
> (3) is outside the applicable guideline range, and is unreasonable, having regard for—
>   (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and
>   (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or
> (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.
> *The court of appeals* shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and *shall give due deference to the district court's application of the guidelines to the facts.*"

18 U.S.C. § 3742(e) (emphasis added).[2] The legislative history of the adoption of the "due deference" standard for reviewing the district court's application of the guidelines to the facts states that

> "[t]his standard is intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity. The deference due a district court's determination will depend upon the relationship of the facts found to the guidelines standard being applied. *If the particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test. As the determination approaches a purely legal determination, however, the court of appeals would review the determination more closely.*"

134 Cong.Rec. H11257 (daily ed. Oct. 21, 1988) (statement of Rep. Conyers) (emphasis added). Our court's standard for reviewing mixed questions of law and fact accords with the interpretation of the due deference standard set out in the legislative history:

> "A mixed question is present when the facts are admitted or established and the law is undisputed; the sole issue is whether the law applied to the facts satisfies the statutory standard. Where the mixed question involves primarily a factual inquiry, the clearly erroneous standard is appropriate. If, however, the mixed question primarily involves the consideration of legal principles, then a *de novo* review by the appellate court is appropriate."

*Supre v. Ricketts,* 792 F.2d 958, 961 (10th Cir.1986) (citation omitted).

The rationale for this distinction is that "where a mixed question 'is "essentially factual," ... the concerns of judicial administration will favor the district court, and

---

**2.** The current version of 18 U.S.C. § 3742(e) was amended on November 18, 1988, to add the language directing the court of appeals to give due deference to the district court's application of the guidelines to the facts. The offense in this case occurred on November 16, 1987, prior to this amendment. Because, as we discuss in

the text, the standard of review set out in the amendment to the statute is identical to the standard we would have applied to a mixed question of law and fact before the amendment, no *ex post facto* problem arises. *See United States v. Ortiz,* 878 F.2d 125, 126–27 & n. 1 (3d Cir.1989).

the district court's determination should be ... reviewable under the clearly erroneous standard.'" *United States v. Ortiz*, 878 F.2d 125, 126 (3d Cir.1989) (*quoting United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)). If, however, "'the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be ... reviewed de novo.'" *Id.* at 126–27 (quoting *McConney*, 728 F.2d at 1202).

One court, recognizing that the application of a guideline to the facts presents a mixed question of fact and law, incorporated the sliding-scale standard into its analysis and confirmed that the "circumstances of the case" govern the "amount of deference due a sentencing judge's application of the guidelines to the facts." *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989). Specifically, the court held that the clearly erroneous standard is appropriate when "the issue turns primarily on a factual determination,"[3] but when "the issue ... turns primarily on the legal interpretation of a guideline term, [or on] which of several offense conduct guidelines most appropriately apply to the facts as found, ... the standard moves closer to *de novo* review." *Id; see also Ortiz*, 878 F.2d at 126–27.

■ Here, the facts underlying Roberts' conviction are undisputed. Roberts is arguing first that the aggravated assault rather than the robbery guideline would more "appropriately apply to the facts as found," and second that the district court incorrectly interpreted the guideline terms "brandished" and "otherwise used." In both instances, we are required to interpret

the statute and to exercise our judgment about the values underlying the legal principles involved. Hence, our inquiry is primarily a legal one for which a *de novo* standard of review is appropriate.

### C.

■ Roberts contends that the court erred in applying the guideline for robbery instead of the one for aggravated assault. He argues that the stipulated facts undeniably show he committed an aggravated assault. Although we agree, that circumstance is not dispositive. As the doctrine of lesser included offenses makes clear, conduct may constitute more than one offense. The issue is whether the district court was correct in concluding that Roberts' conduct also "specifically establishes" the more serious offense of robbery. *See* Guidelines § 1B1.2(a). The robbery statute at issue applies to "[w]hoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes from the person or presence of another anything of value." 18 U.S.C. § 2111. The stipulated facts establish that Roberts took eighty dollars from the victim at knifepoint at Fort Carson, conduct which specifically establishes the offense of robbery. The court therefore did not err in applying the robbery guideline.

### D.

■ Roberts also takes issue with the district court's determination that he "used" a knife, rather than "brandished" it. The guidelines state that "brandished" means that "the weapon was pointed or waved about, or displayed in a threatening manner." Guidelines § 1B1.1, comment. (n. 1(c)). A weapon is "otherwise used" when "the conduct did not amount to the discharge of a firearm but was more than

---

**3.** One example of a case in which we applied a clearly erroneous standard is *United States v. Beaulieu*, 893 F.2d 1177, 1181–82 (10th Cir. 1990). The issue in *Beaulieu* was whether the finding that the defendant was "an organizer or leader of a criminal activity" under Guidelines § 3B1.1(a) had factual support in the record. Because we had to analyze not the meaning of

the term "organizer or leader" but the evidence that the defendant played a major role in planning and organizing the criminal activity, exerted authority over others, and gave instructions to others, we properly applied the clearly erroneous standard. *See also United States v. Williams*, 897 F.2d 1034, 1040–41 (10th Cir.1990).

brandishing, displaying, or possessing a firearm or other dangerous weapon." *Id.* (n. 1(g)).

Roberts stipulated that the district court could rely on written witness and investigator statements obtained during the investigation in resolving any factual disputes. Rec., vol. I, doc. 4 at 4. Based on such statements, the court found that Roberts "walked up behind the victim while holding his knife in his right hand, put his right arm around the victim, and did hold the knife next to her face and neck ..." when he demanded money. Rec., supp. vol. I, at 15–16. This conduct amounts to more than pointing, waving or displaying in a threatening manner, and the district court was therefore correct in increasing the base offense level on the basis of using a weapon rather than brandishing it.

### E.

■ Finally, we address Roberts' claim that the court erred in determining that the victim was physically restrained during the course of the offense. Under the guidelines, " '[p]hysically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." *Id.* (n. 1(i)). The district court was of the view "that the examples set forth in the guidelines are by way of illustration and not limitation, and not exclusion." Rec., supp. vol. I, at 16. We agree. "By use of the words 'such as,' it is apparent that 'being tied, bound, or locked up' are listed by way of example rather than limitation." *United States v. Stokley,* 881 F.2d 114, 116 (4th Cir.1989). We have no difficulty in concluding that a victim who is held around the neck at knifepoint is denied freedom of movement so as to be physically restrained.

We conclude that the district court correctly applied the guidelines to the stipulated facts. The sentence is AFFIRMED.