**UNITED STATES of America**

v.

**William J. LITTLE, Defendant.**

**Crim. No. 89–481(SSB).**

United States District Court, D. New Jersey.

May 3, 1990.

Samuel A. Alito, Jr., U.S. Atty. by Donna D. Gallucio and Howard J. Wiener (argued), Asst. U.S. Attys., Camden, N.J., for U.S.

Office of the Federal Public Defender by John J. Hughes, Asst. Federal Public Defender, Trenton, N.J., for defendant William J. Little.

BROTMAN, Senior District Judge.

Presently before the court is defendant's appeal of the sentence imposed by United States Magistrate Jerome B. Simandle. Defendant claims that the two month sentence was imposed in violation of law because the magistrate found that Little suffered from an extraordinary physical impairment within the meaning of § 5H1.4 of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), codified at 18 U.S.C. § 3553 *et seq.* and 28 U.S.C. § 991–998. He asserts that the Guidelines preclude a sentence of incarceration where there has been a finding that a defendant has an extraordinary physical impairment.

For the following reasons, the court finds that Little's position is not supported by a careful reading of Section 5H1.4.

## I. FACTS AND PROCEDURE

On November 16, 1982, John Little, the father of defendant William J. Little, died. Defendant William Little negotiated checks from the Social Security Administration sent to John Little after his death. On two occasions, the Social Security Administration sent notices indicating that benefits would be terminated because it had received notice of John Little's death; in response, defendant William Little appeared at the Camden, New Jersey, office of the Social Security Administration and represented that he was his father and should therefore continue to receive benefits. By impersonating his father, defendant received approximately $32,208.00 to which he was not entitled over a period of approximately five years.

On January 13, 1989, a single count criminal complaint was filed charging that defendant Little had knowingly and willfully embezzled monies of the United States not in excess of $100, a misdemeanor violation of 18 U.S.C. § 641 and 18 U.S.C. § 2. On June 14, 1989, Little entered a plea of guilty, and sentencing hearings were held on September 27, 1989, and December 19, 1989.

Little sought a downward departure at sentencing for an extraordinary physical impairment, namely chronic obstructive pulmonary disease. Section 5H1.4 of the Sentencing Guidelines, in pertinent part, states:

> Physical condition is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guidelines a sentence should fall. However, an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment.

U.S.S.G. § 5H1.4. The magistrate found that Little did suffer from an extraordinary physical impairment, and granted a downward departure. The sentence imposed was for a custodial term of two months. The otherwise applicable guideline range

required incarceration for a period of six to twelve months. Little filed a timely notice of appeal, and arguments were presented to this court on April 25, 1990.

## II. DISCUSSION

■ The government asserts that only it is entitled to seek review of the discretionary grant of a downward departure, 18 U.S.C.A. § 3742(b)(3) (West Supp.1990), and that the defendant's appeal should be dismissed. Defendant argues that the magistrate was required to impose a sentence other than imprisonment under Section 5H1.4 after finding that defendant had the extraordinary physical impairment. The defendant therefore claims that the sentence was imposed in violation of law within the meaning of 18 U.S.C. § 3742(a)(1), or an incorrect application of the sentencing guidelines within the meaning of 18 U.S. C.A. § 3742(a)(2) (West Supp.1990). Accordingly, this court has jurisdiction over the appeal.[1]

■ Both sides agree that the magistrate found that Little suffers from an extraordinary physical impairment. The government and the defendant further agree that the magistrate's sentencing determination is entitled to "due deference." *United States v. Ortiz*, 878 F.2d 125 (3d Cir.1989); 18 U.S.C.A. § 3742(g) (West Supp.1990). This standard is flexible and covers a spectrum ranging from purely factual issues to those that are purely legal. The standard of review changes from being very deferential, as, for example, the clearly erroneous standard for factual issues, and becomes more exacting, as, for example, plenary review, as the issue moves toward a position on the spectrum closer to the set of purely legal issues. *See Ortiz*, 878 F.2d at 126–27. In the instant case, the question presented is exclusively legal: whether Section 5H1.4 *requires* a sentence other than imprisonment when the defen-

dant has an extraordinary physical impairment.

The court is "guided by well-settled principles of statutory construction." *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 907, 909 (3d Cir.1990). " '[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " *Id.* 898 F.2d at 909–10 (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). As the Third Circuit explained, "the plain meaning rule is 'an axiom of experience' and does not preclude consideration of persuasive legislative history if it exists; the 'circumstances of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect.' " *Id.* 898 F.2d at 910 (quoting *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981)). "In sum, if the statutory language is clear and plain, a court must give it effect unless the legislative history is such that a literal reading 'will produce a result demonstrably at odds with the intention of [the] drafters....' " *Id.* 898 F.2d at 910 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3251, 73 L.Ed.2d 973 (1982)).

The plain meaning of Section 5H1.4 suggests that the magistrate committed no error in imposing a reduced term of incarceration because of Little's physical impairment. The critical language in Section 5H1.4 is the word "may." The magistrate acknowledged the significance of the Sentencing Commission's choice of language:

This court recognizes that a finding of "extraordinary physical impairment" may justify a departure from the Guide-

---

**1.** Little also argues in the alternative that, even assuming that the Guidelines permit the imposition of a term of incarceration on a defendant who has an extraordinary physical impairment, there is no support in the record for a finding that minimal incarceration is consistent with

the defendant's condition. This is an attack on the sentencing court's exercise of discretion as to the amount of the downward departure. The court lacks jurisdiction to review such a claim. *See United States v. Denardi*, 892 F.2d 269, 271 (3d Cir.1989).

lines to impose a non-custodial sentence. Guideline § 5H1.4 should not be read as precluding a custodial sentence in such a case, however, because the Guideline uses the permissive "may" rather than the mandatory "shall," and because the degree of any departure should be judged in light of the nature of the impairment as it bears upon the relative hardship of incarceration.

Appellant's Appendix at 11 (Statement of Reasons in Judgment of Sentence).

Little claims that the magistrate's reading of Section 5H1.4 was misplaced. He argues:

Had the Commission used the word "shall", then courts would be mandated to impose a probationary sentence in a murder case if the defendant had an extraordinary physical impairment. It seems more reasonable to assume that the use of the word "may" merely indicates that a court may impose a sentence of other than imprisonment *in an otherwise appropriate case* where the defendant suffers from such an impairment.

Brief of Appellant at 8 n. 6 (emphasis in original).

Little also argues that the guideline creates three categories of physical impairments: minor physical impairments, ordinary physical impairments, and extraordinary physical impairments. Little claims that each category requires different treatment. Thus, Little would have the court read Section 5H1.4 as follows:

Physical condition is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guideline a sentence should fall. *In most cases, a minor physical impairment, such as a cold, should not be a basis for departing from the applicable guideline range. In some cases, however, a physical impairment, such as the defendant being confined to a wheel chair, may be a reason to depart. In such a case, the court has discretion as to the amount of the departure.* However, an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment *in an*

*otherwise appropriate case. Thus, when a defendant has an extraordinary physical impairment and has not committed a truly heinous crime, only a sentence with no period of incarceration may be imposed.*

The Sentencing Commission could have employed the very language that Little seeks to infer from Section 5H1.4. It chose not to do so. The gloss that Little would read into the guideline, as indicated by the underlined sections, is simply too much.

The more plausible reading of Section 5H1.4 is that the Guidelines contemplate two categories of cases: the ordinary case where an impairment is not relevant, and the extraordinary case where the defendant's impairment is relevant. Such a reading of Section 5H1.4 covers the universe of possibilities: those defendants whose situations are ordinary, and those whose situations are outside the ordinary. In the case of the latter, an impairment is relevant, and "may be a reason to impose a sentence other than imprisonment." The use of the word "may" indicates uncertainty and a lack of definiteness. Implicit is the possibility that in some instances an extraordinary physical condition may *not* provide a basis for a departure.

Such a departure may be to the extent of imposing a noncustodial sentence, but this is not necessarily so. The only other court to confront the argument pressed by Little rejected it and stated that "[t]he greater departure, no imprisonment, includes the lesser departure, shorter imprisonment." *United States v. Ghannam*, 899 F.2d 327, 329 (4th Cir.1990).

Little points to no legislative history that would require the reading he suggests is the correct one. The court's independent research has likewise failed to disclose an unmistakable legislative intent that courts give the words of Section 5H1.4 any meaning other than their literal effect. Accordingly, Little's suggested reading must be rejected.

## III. CONCLUSION

For the foregoing reasons, the sentence imposed by the magistrate will be affirmed

to the extent that Little claims the sentencing court misapplied the guidelines. To the extent that Little claims that the magistrate erred in refusing to exercise his discretion further in reducing the sentence, the appeal will be dismissed for lack of jurisdiction.