USCA1 Opinion

 

 February 2, 1993 UNITED STATES COURT OF APPEALS For The First Circuit _________________________ No. 92-1491 UNITED STATES OF AMERICA, Appellee, v. ABEL A. MARIANO, JR., Defendant, Appellant. _________________________ No. 92-1630 UNITED STATES OF AMERICA, Appellee, v. BARRY BUTTERWORTH, Defendant, Appellant. _________________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ Richard J. Shea, with whom Edward C. Roy was on brief, for ________________ ______________ appellant Abel A. Mariano, Jr. Richard A. Gonnella for appellant Barry Butterworth. ___________________ Edwin J. Gale, Assistant United States Attorney, with whom ______________ Lincoln C. Almond, United States Attorney, and Margaret E. ___________________ ____________ Curran, Assistant United States Attorney, were on brief, for ______ appellee. _________________________ February 2, 1993 _________________________ SELYA, Circuit Judge. These consolidated appeals SELYA, Circuit Judge. ______________ challenge determinations made by the district court under the federal sentencing guidelines. Concluding, as we do, that the court misconstrued its authority to depart from a predetermined sentencing range in consequence of a defendant's substantial assistance, U.S.S.G. 5K1.1 (Nov. 1991), we remand for resentencing. I. BACKGROUND I. BACKGROUND The instant appeals find their genesis in the polluted political purlieus of Pawtucket, Rhode Island. See, e.g., United ___ ____ ______ States v. Sarault, 975 F.2d 17 (1st Cir. 1992) (affirming ______ _______ racketeering sentence with respect to Pawtucket's mayor). The appellants, Abel A. Mariano, Jr. and Barry Butterworth, secured lucrative municipal contracts and, in the course of performing the jobs, lubricated the wheels of city government by paying under-the-table cash stipends to insistent municipal officials. Mariano made periodic payments (perhaps totalling as much as $50,000) to forestall the reassignment of sewer-line repair work to another contractor. Butterworth decided to play ball as part of his effort to retain generous contracts for the renovation of McCoy Stadium. In all, Butterworth made a series of payments to the ringleaders in an aggregate amount exceeding $100,000. Appellants' payments took place over a substantial span of time. It was only after the authorities started to uncover pervasive corruption in the Sarault administration that appellants began cooperating with the U.S. Attorney. In the 2 aftermath of this cooperative effort, the government, rather than seeking indictments, prepared informations charging the two men with violating 18 U.S.C. 666(a)(2) (1988).1 The defendants pled guilty pursuant to plea agreements providing in relevant part that the government would pursue a reduction in the offense level based on the defendants' assistance to law enforcement agencies. Mariano and Butterworth were charged and sentenced separately. In each instance, the prosecution described the defendant's cooperation and argued for a six-level downward departure pursuant to U.S.S.G. 5K1.1. The district court refused to depart and sentenced each defendant to a twenty-seven month prison term an incarcerative sentence at the top end of the guideline sentencing range (GSR). The government moved for reconsideration. In explaining his refusal to reconsider, the district judge, referring to and quoting from United States v. _____________ Aguilar-Pena, 887 F.2d 347 (1st Cir. 1989), stated that he did ____________ not have discretion to depart. In these appeals,2 appellants claim in unison that the ____________________ 1The statute of conviction criminalizes "corruptly giv[ing] . . . anything of value to any person, with intent to influence or reward an agent of . . . local . . . government, or any agency thereof, in connection with any business, transaction, or series of transactions . . . involving [$5000 or more]," so long as the governmental unit in question receives substantial federal subsidies. 18 U.S.C. 666(a)(2). 2Although the plea agreements contain provisions by virtue of which the defendants ostensibly waived their rights of appeal, the government has conceded that, in the circumstances of these cases, the waiver provisions are impuissant. We accept this concession uncritically. Hence, we take no view of either the 3 district court erred in establishing the base offense level (and, hence, in fixing the GSR), that the court misapprehended the legal standard governing departures under section 5K1.1, and that their sentences were "plainly unreasonable" in derogation of 18 U.S.C. 3742(a)(4) (1988). In addition, Mariano contends that the district court labored under fundamental factual misconceptions and violated the Due Process Clause by focusing exclusively on deterrence concerns to the detriment of an individualized sentence. Not to be outdone, Butterworth contends that the government breached the plea agreement by failing to argue enthusiastically enough in support of a downward departure. We concentrate initially on appellants' flagship claim the assertion that the court below misapprehended the controlling legal standard, thus mismeasuring the limits of the discretion entrusted to it under section 5K1.1. We take this tack because, if this claim pans out, most of appellants' other asseverations need not be considered. II. THE COURT'S AUTHORITY TO DEPART II. THE COURT'S AUTHORITY TO DEPART We begin our discussion of the court's authority to depart by pondering a jurisdictional quandary. That quandary resolved, we then address the merits of appellants' claim. A. Appellate Jurisdiction. A. Appellate Jurisdiction. ______________________ Ordinarily, an appeal will not lie from a district court's refusal to depart from a properly calculated sentencing ____________________ enforceability vel non of such waivers or the safeguards which ___ ___ must be employed in respect thereto. 4 range. See United States v. Tardiff, 969 F.2d 1283, 1290 (1st ___ ______________ _______ Cir. 1992); United States v. Romolo, 937 F.2d 20, 22 (1st Cir. _____________ ______ 1991) (collecting cases). However, appellate jurisdiction may attach when it appears that the failure to depart stemmed from the sentencing court's mistaken impression that it lacked the legal authority to depart or, relatedly, from the court's misapprehension of the rules governing departure. See United ___ ______ States v. Amparo, 961 F.2d 288, 292 (1st Cir.), cert. denied, 113 ______ ______ _____ ______ S. Ct. 224 (1992); United States v. Lauzon, 938 F.2d 326, 330 _____________ ______ (1st Cir.), cert. denied, 112 S. Ct. 450 (1991); Romolo, 937 F.2d _____ ______ ______ at 22. Although this paradigm is dictated by the Sentencing Reform Act, see Romolo, 937 F.2d at 23 (discussing operation of ___ ______ 18 U.S.C. 3742(a)), it also works well from a practical standpoint: in respect to declinations to depart, the limited appellate review that is available serves to correct errors which are essentially "legal" in nature, but does not brook interference with a sentencing court's exercise of factfinding functions or discretion. See Amparo, 961 F.2d at 292; see also ___ ______ ___ ____ Romolo, 937 F.2d at 23. ______ These appeals fit snugly within the contours of the exception permitting appellate review. The gravamen of appellants' complaint is their colorable claim3 that the ____________________ 3In what it terms "the rarest of all cases," the government, which has a duty to see that justice is done, Berger v. United ______ ______ States, 295 U.S. 78, 88 (1935), argues that the defendants' ______ assignment of legal error is on the mark. While such unanimity of purpose might raise jurisdictional concerns in a civil case, see Muskrat v. United States, 219 U.S. 346, 361 (1911) ___ _______ ______________ (explaining adversity requirement); see also Moore v. Charlotte- ___ ____ _____ __________ 5 district court confused the legal standard governing departures under U.S.S.G. 5K1.1 with the legal standard governing departures under a markedly different guideline, U.S.S.G. 5K2.0. This claim presents a question of law, not of fact, comfortably within our assigned purview. We hold, therefore, that we have jurisdiction over these appeals. B. The Distinction Between Departure Modalities. B. The Distinction Between Departure Modalities. ____________________________________________ We turn next to the merits of the claim. Because the assignment of error involves the parameters of a district judge's departure authority, we afford plenary review. See Lauzon, 938 ___ ______ F.2d at 330; cf. United States v. Diaz-Villafane, 874 F.2d 43, 49 ___ _____________ ______________ (1st Cir.) (holding that de novo review is warranted when the __ ____ court of appeals is called upon to determine "whether or not circumstances are of a kind or degree that may appropriately be relied upon to justify departure" under section 5K2.0), cert. _____ denied, 493 U.S. 862 (1989). ______ The district judge explicitly interpreted our decision in United States v. Aguilar-Pena, 887 F.2d 347 (1st Cir. 1989), _____________ ____________ as restricting his ability to depart downward in these cases. Aguilar-Pena, however, involved a district court's decision to ____________ ____________________ Mecklenburg Bd. of Educ., 402 U.S. 47, 48 (1971) (per curiam) _________________________ (finding no case or controversy where "both litigants desire precisely the same result"), criminal cases are a breed apart. When the government confesses error in a criminal proceeding, appellate courts routinely continue to exercise previously acquired jurisdiction. See, e.g., Mariscal v. United States, 449 ___ ____ ________ _____________ U.S. 405 (1981) (per curiam); Young v. United States, 315 U.S. _____ ______________ 257, 258-59 (1942); see also United States v. Udo, 963 F.2d 1318, ___ ____ _____________ ___ 1319 (9th Cir. 1992) (reviewing a failure to depart pursuant to 5K1.1 in circumstances analogous to those presented in this case). 6 depart under section 5K2.0.4 See id. at 349-53. Under section ___ ___ 5K2.0, a district court is empowered to depart from the GSR if there "exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." U.S.S.G. 5K2.0 (quoting 18 U.S.C. 3553(b)). Noting that "the birth of the Sentencing Commission was to some extent reflective of Congress's ardent desire to dispense with inequalities based on localized sentencing responses," Aguilar-Pena, 887 F.2d at 352, we held that the ____________ district court's authority to depart under section 5K2.0 was restricted to those few instances where there is "something 'special' about a given offender, or the accouterments of the crime committed, which distinguishes the case from the mine-run for that offense." Id. at 350. In other words, Aguilar-Pena ___ ____________ reflected this court's staunch belief that section 5K2.0 operates as a safety valve to be employed at the discretion of the district judge on those infrequent occasions when some important, atypical factor, not duly considered by the Sentencing Commission, removes a particular case from "the heartland for a given offense." Id. at 351. ___ U.S.S.G. 5K1.1 is a different provision with a different raison d'etre. Congress specifically directed the ______ ______ Sentencing Commission to ____________________ 4Aguilar-Pena flowed naturally from, and relied upon, our ____________ opinion in United States v. Diaz-Villafane. See, e.g., Aguilar- _____________ ______________ ___ ____ ________ Pena, 887 F.2d at 349-50 (citing and quoting Diaz-Villafane, 874 ____ ______________ F.2d at 49-52). Like Aguilar-Pena, Diaz-Villafane involved a ____________ ______________ departure under U.S.S.G. 5K2.0. 7 assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed . . . to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. 28 U.S.C. 994(n) (1988). Section 5K1.1 sprouted from this statutory seed. It provides, inter alia, that: _____ ____ Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines. U.S.S.G. 5K1.1. This guideline serves a dual purpose. In addition to permitting ex post tailoring of defendants' sentences __ ____ to reflect meaningful assistance rendered between the dates of apprehension and sentencing, it provides defendants, ex ante, __ ____ with an incentive to cooperate in the administration of justice. See, e.g., United States v. Damer, 910 F.2d 1239, 1241 (5th Cir.) ___ ____ _____________ _____ (per curiam), cert. denied, 111 S. Ct. 535 (1990). _____ ______ The methodological contrast between the two departure modalities is glaring. Because section 5K2.0 in a sense operates to promote disparity, the Sentencing Commission strove to minimize the number of times it would be invoked. But, because ________ section 5K1.1 operates in part as an incentive, promoting cooperation with law enforcement agencies, the Sentencing Commission strove to maximize the number of times it would be ________ invoked.5 These divergent purposes, coupled with the ____________________ 5Available statistics reflect the Commission's success in achieving this differential. Of 31,785 dispositions reported in 1991, 11.9 percent involved substantial assistance departures 8 significant linguistic differences between the two guidelines, clearly indicate that the legal standard for departures under section 5K2.0 cannot be transplanted into the substantial assistance sphere. The district court, therefore, erred in its stated reliance on Aguilar-Pena. ____________ C. The Standard for Substantial Assistance Departures. C. The Standard for Substantial Assistance Departures. __________________________________________________ In order to determine whether the court's error was harmless, we must explore the dimensions of the legal standard that the district court should have used. We have not yet had occasion to discuss the way in which departure decisions ought to be made under U.S.S.G. 5K1.1. We do so today. 1. Discretion. We begin with bedrock. 1. Discretion. __________ Notwithstanding that a government motion is a sine qua non to a ____ ___ ___ departure for a defendant's substantial assistance, see Wade v. ___ ____ United States, 112 S. Ct. 1840, 1843 (1992), the decision whether _____________ to depart after the government has made such a motion, like the related decision as to the extent of any resultant departure, falls squarely within the district court's domain. The district court is not obligated to depart downward simply because a grateful prosecutor prefers a lighter sentence. See United ___ ______ States v. Spiropoulos, 976 F.2d 155, 162 (3d Cir. 1992); United ______ ___________ ______ States v. Ah-Kai, 951 F.2d 490, 494 (2d Cir. 1991); United States ______ ______ _____________ v. Munoz, 946 F.2d 729, 730 (10th Cir. 1991); United States v. _____ _____________ Carnes, 945 F.2d 1013, 1014 (8th Cir. 1991); United States v. ______ _____________ ____________________ whereas only 7.5 percent involved all other departures combined. See 1991 United States Sentencing Commission Ann. Rep. at 133-35. ___ 9 Richardson, 939 F.2d 135, 139 (4th Cir.), cert. denied, 112 S. __________ _____ ______ Ct. 599 (1991), 112 S. Ct. 942 (1992); United States v. Keene, _____________ _____ 933 F.2d 711, 715 (9th Cir. 1991); Damer, 910 F.2d at 1241; _____ United States v. Pippin, 903 F.2d 1478, 1485 (11th Cir. 1990). ______________ ______ Put bluntly, while a government motion is a necessary precondition to a downward departure based on a defendant's substantial assistance, the docketing of such a motion does not bind a sentencing court to abdicate its responsibility, stifle its independent judgment, or comply blindly with the prosecutor's wishes. The government, seeking a more prominent role in the decisionmaking process, points out the Commission's advice that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." U.S.S.G. 5K1.1, comment. (n.3). But, this advice, although sound, was never intended to rein in the district court's discretion concerning the need for, and extent of, a downward departure once a government motion is on the table. See United States v. Castellanos, 904 F.2d 1490, 1497 ___ _____________ ___________ (11th Cir. 1990). Rather, Application Note 3 sets forth the suggested degree of deference that should be afforded to the prosecution's assessment of the facts surrounding a defendant's assistance and intimates that, particularly in difficult cases, the sentencing court ought not to "inquire too intrusively into the government's file" on this delicate subject. Spiropoulos, ___________ 10 976 F.2d at 163 n.5; see also Keene, 933 F.2d at 714 (observing ___ ____ _____ that the "prosecutor is in the best position to know whether the defendant's cooperation has been helpful"). When all is said and done, it remains the district judge's decision not the prosecutor's whether to depart, and if so, to what degree. 2. Relevant Factors. Although the district court's 2. Relevant Factors. ________________ discretion in passing upon a section 5K1.1 motion is wide, it is not unbridled. The guideline itself provides that: The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following: (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant; (3) the nature and extent of the defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; (5) the timeliness of the defendant's assistance. U.S.S.G. 5K1.1. While the Commission's list is representative rather than exclusive, the five enumerated factors should be considered the mother lode of substantial assistance inquiries. A district court, faced with a section 5K1.1 motion, must at a bare minimum indicate its cognizance of these factors. In the typical case the court would also do well to make specific findings regarding each item. The open-ended nature of the statutory list does not 11 mean that a district court may consider any datum it pleases when passing upon a section 5K1.1 motion. As a basis for departing, a court may consider mitigating factors only to the extent that they can fairly be said to touch upon the degree, efficacy, timeliness, and circumstances of a defendant's cooperation.6 See United States v. Chestna, 962 F.2d 103, 106-07 (1st Cir.) ___ _____________ _______ (per curiam), cert. denied, 113 S. Ct. 334 (1992); United States _____ ______ _____________ v. Thomas, 930 F.2d 526, 528-29 (7th Cir.), cert. denied, 112 S. ______ _____ ______ Ct. 171 (1991). After all, the substantial assistance provision is not to be used as a mechanism for short-circuiting other, more restrictive provisions of the sentencing guidelines. See United ___ ______ States v. Hall, 977 F.2d 861, 865 (4th Cir. 1992).7 ______ ____ A somewhat different situation obtains in respect to the factors that a court may consider as a means to remain within, or incrementally closer to, the GSR. Since the sentencing range itself is an expression of Congress's will, a district court retains broad discretion to exhume factors unrelated to substantial assistance before burying the GSR. See, ___ e.g., United States v. Mittelstadt, 969 F.2d 335, 336-37 (7th ____ _____________ ___________ ____________________ 6The narrowing effect of this circumscription should not be exaggerated. The factors that legitimately relate to a defendant's cooperation may be many and varied. See U.S.S.G. ___ 5K1.1, comment. (backg'd) ("The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis."). 7As this logic makes clear, the government and the appellants are incorrect in suggesting here that a district court is obliged to consider factors such as proportionality when _______ deciding whether, or how much, to depart under section 5K1.1. See United States v. Kohl, 972 F.2d 294, 299 (9th Cir. 1992); ___ ______________ ____ Richardson, 939 F.2d at 139. __________ 12 Cir. 1992) (ruling that the district court did not abuse its discretion in considering defendant's chronic alcoholism on a section 5K1.1 motion); Carnes, 945 F.2d at 1014 (holding that the ______ benefit a defendant received from the prosecution's decision not to press an additional charge was a permissible ground for limiting the extent of a downward departure). Even if the five factors enumerated in section 5K1.1 weigh in a defendant's favor, the district court may, on the basis of other considerations, not constitutionally proscribed, cf., e.g., Wade, 112 S. Ct. at 1843- ___ ____ ____ 44; United States v. Drown, 942 F.2d 55, 60 (1st Cir. 1991), _____________ _____ decide to forgo or curtail a downward departure for substantial assistance. In sum, the limitations on the variety of considerations that a court may mull in withholding or curtailing a substantial assistance departure are not nearly so stringent as those which pertain when a court in fact departs downward. This seeming paradox is neither unusual nor unsettling; indeed, it is this very quality of unequal centrifugal and centripetal forces that helps distinguish discretionary departure provisions like section 5K1.1 from the sentencing guidelines' array of mandatory adjustment provisions like U.S.S.G. 3E1.1 (adjustment for acceptance of responsibility) and U.S.S.G. 3B1.1, 3B1.2 (adjustment for aggravating or mitigating role in the offense). 3. Weighing the Factors. Once the government files a 3. Weighing the Factors. ____________________ section 5K1.1 motion, weighing the relevant factors in order to decide whether to depart (and if so, by how much) is something 13 best done by the sentencing court. United States v. Atkinson, ______________ ________ ___ F.2d ___, ___ (7th Cir. 1992) [1992 U.S. App. LEXIS 30082 at *22-25]; Thomas, 930 F.2d at 531. In the section 5K1.1 milieu, ______ as elsewhere, the court of appeals will, to the extent of its jurisdiction, review discretionary decisions only for abuse of discretion; and we will review the extent of a departure based on an acceptable set of factors only to ensure reasonableness. See ___ Diaz-Villafane, 874 F.2d at 49. ______________ D. Summing Up. D. Summing Up. __________ We rule today that the legal standard for departure is materially different under U.S.S.G. 5K1.1 than under U.S.S.G. 5K2.0. A district court confronted with a government motion for departure pursuant to section 5K1.1 must consider the factors specifically enumerated in that guideline as well as other factors which in the court's judgment bear on the decision. In so doing, however, the court must recognize that mitigating concerns are relevant only insofar as they relate to a defendant's substantial assistance. In all events, the district court retains wide discretion concerning whether to depart under section 5K1.1; and, if it decides that a departure is warranted, it also possesses appreciable discretion in fixing the extent of the departure. In these cases, the district court premised its decision not to depart on a legal standard designed to hold departures to a minimum a standard that has no relevance in respect to substantial assistance departures. And, although many 14 of the integers that enter into the section 5K2.0 calculus can be considered for certain purposes under section 5K1.1, we are unable confidently to say on this record that the judge's error was harmless. Thus, we remand to the district court with instructions to vacate appellants' sentences and conduct new sentencing hearings. We see no need to require that a different judge preside over the resumed proceedings. Cf., e.g., United ___ ____ ______ States v. Diaz-Bastardo, 929 F.2d 798, 800-01 (1st Cir. 1991). ______ _____________ III. THE COURT'S CHOICE OF AN ANALOGOUS GUIDELINE III. THE COURT'S CHOICE OF AN ANALOGOUS GUIDELINE Given the fact that new sentencing hearings will be held, we decline, with one exception, to address appellants' other challenges to the proceedings below.8 The exception relates to appellants' assertion that the district court, confronted by a lacuna in the guidelines, failed properly to select the most analogous guideline as a starting point for computing the GSR. We treat with this assertion because we can envision no circumstances in which a choice of this nature will not face the district court on remand. We set the stage. The Sentencing Commission has yet to promulgate an offense guideline covering the offense of conviction in these cases, i.e., the making of illicit payments ____ to a municipal official in violation of 18 U.S.C. 666(a)(2). In such circumstances, U.S.S.G. 2X5.1 directs the district ____________________ 8Because we do not reach appellants' "reasonableness" argument, we take no view of the suitability vel non of the ___ ___ sentences originally imposed. 15 court to "apply the most analogous offense guideline" unless no "sufficiently analogous guideline" can be found.9 Appellants urged that U.S.S.G. 2C1.2 (dealing in part with the giving of a gratuity to a public official) provided the best basis for a comparison. The district court rejected this exhortation and found U.S.S.G. 2C1.1 (dealing with bribery of, and extortion by, public officials) to be the most analogous guideline. We discern no error in this determination. Before explaining our reasoning, however, we first address the appropriate standard of appellate review. A. Standard of Review. A. Standard of Review. __________________ An appellate tribunal must "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. 3742(e) (1988). We have interpreted this statute as requiring, in most instances, that the court of appeals review a trial court's application of a sentencing guideline to the facts only for clear error. See, e.g., United States v. Ruiz, 905 F.2d ___ ____ _____________ ____ 499, 507 (1st Cir. 1990); United States v. Wright, 873 F.2d 437, _____________ ______ 444 (1st Cir. 1989). The propriety of using the clearly erroneous standard in scrutinizing a sentencing court's ____________________ 9In the court below, appellants argued that a particular offense guideline, U.S.S.G. 2C1.2, was a better fit than U.S.S.G. 2C1.1 (the offense guideline deemed most comparable by the district judge). On appeal, Butterworth attempts for the first time to raise the different issue of whether any ___ sufficiently analogous guideline exists. This issue has not been properly preserved for appellate review. See United States v. ___ ______________ Slade, ___ F.2d ___, ___ (1st Cir. 1992) [No. 92-1176, slip op. _____ at 6] (reiterating the established rule that points not argued in the district court cannot be raised for the first time on appeal). 16 application of law to fact will depend largely on whether the question presented is essentially factual or essentially legal; the more fact-dominated the question, the more likely it is that clear-error review will be appropriate. See United States v. ___ _____________ Ortiz, 878 F.2d 125, 126-27 (3d Cir. 1989); United States v. _____ ______________ Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989); see also Roland _________ ___ ____ ______ M. v. Concord School Comm., 910 F.2d 983, 990-91 (1st Cir. 1990) __ ____________________ (discussing desirability of clear-error review in instances where a district court must find the facts and then make an evaluative judgment, applying a defined legal standard to the facts), cert. _____ denied, 111 S. Ct. 1122 (1991). ______ In these cases, a series of factors suggests that the contested issue lies closer to the fact-intensive end of the continuum: there is no indication that the district court misunderstood the choices presented under the guidelines; there is no articulation of a dispute concerning the reach of the provisions proffered as suitable analogs; and there is no necessity for us, in resolving the controversy, to determine the far broader (and essentially legal) question of whether a particular offense guideline will always be most analogous to 18 ______ U.S.C. 666(a)(2). Simply stated, the issue before the district court was whether appellants' actions in "corruptly giv[ing]" payoffs to municipal officials "with intent to influence or reward" those officials in connection with city contracts, 18 U.S.C. 666(a)(2), were more akin to providing a gratuity, U.S.S.G. 2C1.2, than to passing a bribe, U.S.S.G. 2C1.1. 17 This issue is essentially factual. It required the court, in effect, to find the facts pertaining to the offenses of conviction and make evaluative judgments concerning those facts (including a judgment as to whether appellants' payments were intended to "influence," rather than "reward," city officials). Accordingly, we apply the clearly erroneous standard of review.10 B. The Appropriate Analogy. B. The Appropriate Analogy. _______________________ The essential difference between a bribe and an illegal gratuity is the intention of the bribe-giver to effect a quid pro ____ ___ quo. See United States v. Muldoon, 931 F.2d 282, 287 (4th Cir. ___ ___ _____________ _______ 1991). Hence, a bribery guideline, section 2C1.1, applies when a transfer of money has "a corrupt purpose, such as inducing a public official to participate in a fraud or to influence his official actions." U.S.S.G. 2C1.1, comment. (backg'd). The gratuity provision, on the other hand, does not include a corrupt purpose as an element of the offense. See U.S.S.G. 2C1.2, ___ comment. (backg'd). ____________________ 10In the event no sufficiently analogous guideline exists, the sentencing court must resort to the general principles adumbrated in 18 U.S.C. 3553(b) (1988) (providing that, in the absence of an offense guideline, the court shall impose an "appropriate" sentence, having due regard for, inter alia, the _____ ____ gravity of the offense; the need for punishment, deterrence, retraining, and the like; and "the relationship of the sentence imposed to sentences prescribed by [other] guidelines . . . and the applicable policy statements of the Sentencing Commission"). Because that scenario has no bearing here, see supra note 9, we ___ _____ find inapposite the standard of review limned in United States v. _____________ Gabay, 923 F.2d 1536, 1545 (11th Cir. 1991) (employing de novo _____ __ ____ review where defendant contended that no sufficiently analogous guideline existed). 18 This distinction between the two offense guidelines is brought into bold relief by the differences between the statutes to which the guidelines relate. The bribery guideline applies, for example, to the offense of "corruptly giv[ing] . . . anything of value" to a federal official with the intent of "influenc[ing] any official act" or "inducing" the official to violate his or her lawful duty. 18 U.S.C. 201(b)(1) (1988). This seems virtually to mirror the statute of conviction here, which, among other things, criminalizes "corruptly giv[ing] . . . anything of value to any person, with intent to influence" a decision of state or local government. 18 U.S.C. 666(a)(2). The common thread that runs through both statutes is the intent of the payer, by the greasing of palms, to affect the future actions of a public official. In contrast, the gratuity guideline refers to crimes of a somewhat different genre. It applies, for example, to persons who give things of value to federal officers "for or because of any official act performed or to be performed by such public official." 18 U.S.C. 201(c)(1)(A) (1988). Notably, under the gratuity guideline, there is no requirement that the gift be "corruptly" given with the intent to affect the payee's mindset or actions. Phrased another way, the gratuity guideline presumes a situation in which the offender gives the gift without attaching any strings, intending it instead as a reward for actions the public official has already taken or is already committed to take. With these distinctions in mind, appellants' contention 19 is easily dispelled. Here, Mariano admitted that he paid large sums of money in order to forestall city officials from reassigning the work. Butterworth likewise admitted that he forked over $100,000 so that he could retain valuable contracts which Pawtucket might otherwise have redirected to a competitor. Since Mariano and Butterworth each sought to receive a quid pro ____ ___ quo, in the form of future (favorable) treatment, and since the ___ offenses to which they pleaded guilty involved corrupt intent, the district court's determination that their actions were more akin to bribe-giving than to gift-giving was not clearly erroneous. To be sure, appellants protest that they were victims, not perpetrators, of an extortionate scheme, and that they received nothing extra in return for their magnanimity. We are unmoved by these plaints. The fact that appellants, in some sense, may have been the quarry of a pack of venal politicians, and did not themselves initiate the forbidden transactions, does not negate the district court's choice of a guideline analogy. Bribery and extortion are not mutually exclusive concepts. See, ___ e.g., United States v. Hathaway, 534 F.2d 386, 395 (1st Cir.), ____ _____________ ________ cert. denied, 429 U.S. 819 (1976). And the fact that appellants _____ ______ had already received sewer-line and stadium repair contracts at payoff time is also not outcome determinative. Despite the chronology, the district court could supportably find that Mariano and Butterworth corruptly intended their illicit payments to influence the future actions of the late, unlamented Sarault 20 administration. We need go no further. Having willingly sat down to sup with the devil, appellants cannot now expect the courts to swallow their tale uncritically. The guideline analogy chosen by the district court was well within its purview. See United ___ ______ States v. St. Cyr, 977 F.2d 698, 706 (1st Cir. 1992) (holding ______ _______ that "when there are two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous"); Ruiz, 905 F.2d at 508 (similar). ____ The defendants' sentences are vacated and the cases are The defendants' sentences are vacated and the cases are _______________________________________________________ remanded for resentencing. remanded for resentencing. _________________________ 21