KING COAL CO. v. UNITED STATES et al. AMERICAN–HAWAIIAN S. S. CO. v. UNITED STATES. UNITED STATES v. AMERICAN–HAWAIIAN S. S. CO.

(District Court, N. D. California, S. D. June 24, 1925.)

No. 18292.

**I. Collision** ⊜⇒71(3) — **Violation of harbor commissioners' rule as to docking ground for liability, if proximately contributing to accident.**

Violation of harbor commissioners' rule, requiring vessels not to project beyond ends of piers at which they are docked, is ground for liability, if proximately contributing to accident, occurrence of which the rule manifestly was intended to prevent.

**2. Collision** ⊜⇒72(1) — **Violation of harbor commissioners' rule as to docking held to proximately contribute to accident.**

Violation by the P. of harbor commissioners' rule, by projecting beyond end of pier at which it was docked, held to have proximately contributed to collision with it of the H., rendering it also liable for damages therefrom, where the H., till after its rudder had jammed, but for which it would easily have avoided the accident, was unaware of the projection of the P., so that its negligence in the matter of the condition of its steering gear was at most concurrent with that of the P.

In Admiralty. Libel by the King Coal Company against the United States and others, with the American-Hawaiian Steamship Company as third party respondent, with cross-libels by the United States and the Steamship Company each against the other. Decree for libelant.

Ira S. Lillick and Theodore M. Levy, both of San Francisco, Cal., for libelant.

Sterling Carr, U. S. Atty., of San Francisco, Cal., and Frank Maytham, Sp. Asst. Atty. Gen., for respondents.

Andros, Hengstler & Dorr and F. W. Dorr, all of San Francisco, Cal., for third party respondent.

KERRIGAN, District Judge. As before stated at the time of the oral argument, I am unable to agree with counsel for the government that this is a case of inevitable accident. On the contrary, I believe the accident to have been a direct result of negligence on the part of those in charge of the Hagan, which was being operated by the United States Shipping Board. The real question is whether or not the Pennsylvanian also is responsible for the damage, which it is not denied would not have occurred if that vessel had been docked according to the harbor rules.

[1] In some states, the violation of an ordinance or statute is prima facie evidence of negligence. In others, breach of a statute resulting in injury is held to be negligence per se. The harbor commissioners, in the interests of shipping, have enacted a rule which requires vessels not to project beyond the ends of the piers at which they are docked. On strictest principles of law, the plaintiff in an action for negligence obtains the benefit of such a rule or statute as this, if he be one of the class for whose protection it was enacted, and the breach of such rule or statute was the efficient cause of the injury of which he complains. Evers v. Davis, 86 N. J. Law, 196, 202, 90 A. 677. It would seem to follow that the Pennsylvanian, having been guilty of a violation of a rule which manifestly was intended to avoid and prevent the occurrence of just such accidents as the one which took place, must respond in damages for an injury to the libelant proximately resulting therefrom.

[2] But it is urged by the owners of that vessel that violation of the harbor rule did not proximately contribute to the accident's occurrence, and that therefore they cannot be held liable. As authority for this proposition we are referred to several cases which I shall briefly notice.

In The Daniel McAllister, 258 F. 549, 551, 169 C. C. A. 489, the steam tug of that name undertook to move a coal barge from a slip between two piers in the East River, and while doing so collided with a barge moored across the end of one of the piers. This barge was set adrift and caused damage to several others. It was claimed that the barge, which was moored across the end of the pier, in violation of a local harbor rule, was at fault. The court found, however, that the mooring of the barge across the end of the pier was not the proximate cause of the collision, because the McAllister had been negligent in attempting to leave the slip in a flood tide, having its tow made fast on a bridle hawser, instead of alongside, and such negligent operation was the proximate and producing cause of the injury inflicted.

In the case of The Canima, 32 F. 302, a canalboat lying moored alongside of a pier in the North River was struck by a steamship, which was attempting to enter a slip beyond the next pier. The bow of the canalboat projected 10 or 15 feet into the river beyond the end of the pier, and the lower court therefore held that it was partly to blame for the collision, and apportioned the damages. The Circuit Court reversed the decree, saying that the collision was due solely to the inexcusable negligence of the steamship in backing into her berth in the manner described in the opinion.

In The Yucatan, 226 F. 437, 439, 141 C. C. A. 267, a vessel was lying moored in the fairway, where she had no lawful right to be, and was there injured by another vessel, which, by proper navigation and the exercise of reasonable care, could have avoided the collision. It was held by the local Circuit Court of Appeals that a finding by the trial judge that the proximate cause was the careless and negligent handling of the colliding vessel was fully warranted by the evidence.

In The Mary Powell (C. C.) 36 F. 598, a barge lay along a North River pier, with her stern projecting about 16 feet into the river beyond the end of the pier. In that position, she was injured by a steamboat which was starting up the river from a pier 600 feet distant. Adopting the rule followed in The Canima, supra, it was held that the position of the barge was not the proximate cause of the injury.

Without stating the facts of other cases, it is sufficient to say that in one particular all of the authorities cited are distinguishable from the case at bar. Here the evidence shows that the Hagan, but for the jamming of her helm, would easily have avoided the accident. When those in charge of her for the first time became aware of the possibility of a collision with the Pennsylvanian, their steering engine had ceased to function, and their helm, as stated, was jammed amid-

ships. The officers of the Hagan had not, as had those in the cases relied upon, voluntarily placed their vessel in a situation where her proximity to the second vessel might be termed hazardous. It was not until the rudder jammed that an appreciable danger of collision may be said to have existed, and the negligence of the Hagan's officers in failure properly to inspect her steering apparatus at that point was coincident with and concurrent with the negligence of the Pennsylvanian in lying with her stern beyond the end of the pier at which she was docked. In other words, the cases cited are distinguishable because of the fact that, in each of them, the offending vessel, aware of the situation of the vessel which was improperly moored, by proper navigation could have avoided collision with it, but negligently failed to do so.

In the present case, the Hagan, until after her rudder had jammed, was totally unaware of the projection of the stern of the Pennsylvanian beyond the end of its pier. It cannot, therefore, be said that any culpable act of omission or commission was done by the former vessel with knowledge of the latter's breach of the harbor rule. Her negligence in the matter of the condition of her steering gear was at most concurrent with that of the Pennsylvanian already referred to, and not such as to make her exclusively responsible for the collision and consequent damage.

Let a decree be entered against both respondents in accordance with these views. Referred to Commissioner Krull.