**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph Russell MIKALAJUNAS, Jr.,**
**Defendant–Appellant.**

**No. 90–5684.**

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1991.

Decided June 4, 1991.

As Amended June 11, 1991.

---

Ellen Luff, argued, Gambrills, Md. (Gill Cochran, on the brief, Annapolis, Md.), for defendant-appellant.

Joseph Lee Evans, Asst. U.S. Atty., argued, Baltimore, Md. (Breckinridge L. Willcox, U.S. Atty., Jamie E. Bennett, Asst. U.S. Atty., on the brief, Baltimore, Md.), for plaintiff-appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

RESTANI, Judge:

Defendant Joseph R. Mikalajunas, Jr. appeals a sentence imposed under the Federal Sentencing Guidelines in the United States District Court for the District of Maryland. Mr. Mikalajunas pleaded guilty to a charge of accessory after the fact to second degree murder. He alleges that the sentence he received was improper because the court erred in finding a two level enhancement to the offense calculation based on restraint of the victim. We conclude that the appeal is well taken and reverse and remand for resentencing.

## BACKGROUND

On August 22, 1989, Michael Mikalajunas, the brother of appellant Joseph R. Mikalajunas, Jr., was indicted by a grand jury in the District of Maryland for the murder of Christopher Weathers.

On January 16, 1990, a superseding indictment was filed charging Michael Mikalajunas, Craig E. Largent and William R. Woolridge with murder. That superseding indictment also charged that Joseph R. Mikalajunas, Jr. was an accessory after the fact to first degree murder and second degree murder.

On April 4, 1990, Joseph Mikalajunas appeared before the district court and pleaded guilty to the charge of accessory after the fact to second degree murder. That plea was made pursuant to an agreement in which the government and the defense reached a nonbinding stipulation that an offense level of twenty-six was the appropriate guideline level. On July 2, 1990, Joseph Mikalajunas was sentenced to fifty-seven months incarceration. That is the minimum sentence in offense level twenty-five, which the district court concluded was the appropriate level.

According to the statement of facts offered in support of the guilty plea, Joseph Mikalajunas ("Joseph" or "Defendant") was home on leave from the army and was asleep in his parents' home in Anne Arundel County, Maryland, when his brother Michael woke him and told him that Christopher Weathers had been killed earlier that morning. Immediately thereafter, Michael took Joseph to see the body. Joseph observed that the victim had been stabbed, noting one large wound in the neck. Michael explained that he, Craig Largent and William Woolridge, Jr. had lured Weathers to a secluded spot on Fort George G. Meade. Michael indicated that Woolridge had struck Weathers in the head with a baseball bat, after which Weathers had attempted to flee. Michael and Largent had

then chased and caught Weathers and stabbed him to death.

Several days later, Joseph telephoned Steven Bonney[1] and convinced him to assist Michael in burying the body. Several weeks after the murder, Bonney, Michael and another individual buried the body. Subsequently, the third individual who had assisted in the burial led police to the body.

According to the sworn affidavit of Detective Dirk A. Rinehart, Joseph told detectives that Michael had told him that he had "held Mr. Weathers while stabbing him, and that [Michael] had inflicted the wounds...." Appendix at 43. In apparent contravention of the plea agreement, in which the government promised not to use against Joseph information that he supplied after he agreed to cooperate, the government used this affidavit to support its sentencing recommendation.

On May 25, 1990, the Probation Department filed a presentence report. The report stated that the underlying offense of second degree murder has a base level of thirty-three and an accessory after the fact charge warrants an offense level six levels lower than the underlying offense, resulting in a base offense level of twenty-seven. The report allowed an adjustment for acceptance of responsibility and deducted two points, yielding a total offense level of twenty-five.

Following the government's objection to the computation in the presentence report the Probation Department filed an addendum to the presentence report in which it took issue with the government's attempt to obtain an upward departure under Guideline § 5K2.8 (Extreme Conduct), as well as the government's attempt to obtain an increase in the base offense level for "restraint of victim," pursuant to Guideline § 3A1.3. The court rejected the section 5K2.8 upward adjustment, but it raised the offense level by two, pursuant to Guideline § 3A1.3. Because of a downward departure of two levels for substantial assistance

1. The plea agreement uses the spelling "Bonny" as well.

2. We also do not reach the issue of the propriety of agreements limiting information to be sup-

to law enforcement the court arrived at a final offense level of twenty-five.

## DISCUSSION

### I. *Affidavit Used in Contravention of Plea Agreement*

■ In apparent contravention of the plea agreement, the government used the affidavit of Detective Rinehart to support its contention that an upward adjustment for physical restraint was warranted. According to the affidavit, Joseph told police that Michael had related that he had held Weathers while stabbing him. The government had agreed not to use information, such as the affidavit, which was obtained from Joseph while he cooperated. The statement submitted in support of the plea simply said that Michael had told Joseph that he and one other person had caught Weathers and stabbed him. Joseph's attorney failed to object at sentencing to use of the Rinehart affidavit, but argues now that the government breached the agreement, and the sentence, which was based on the affidavit, should be reversed.

Whether objection was waived need not be resolved, because there is no relevant distinction between the facts agreed to for sentencing purposes and the affidavit.[2] Without further elucidation, there is no meaningful way to distinguish between one, catching someone and stabbing him, and two, holding someone and stabbing him. If the government had other information indicating that some substantial restraint was employed, there is nothing of record to show that such information was imparted to Joseph or that such information was properly before the court for purposes of the sentencing.

### II. *Enhancement for Physical Restraint of the Victim*

■ At issue before us is whether Guideline § 3A1.3, providing for enhancement of

plied to the court for sentencing. *See United States v. Crisp,* 817 F.2d 256 (4th Cir.), *cert. denied,* 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987).

offense level for physical restraint, requires something beyond acts which are part and parcel of a stabbing. According to the Commentary to Guideline § 1B1.1, physical restraint is "the forcible restraint of the victim such as by being tied, bound, or locked up." The concept of restraint is not limited to these examples. The question presented is whether the conduct involved here falls with the concept illustrated by these examples, and is intended to be covered by Guideline § 3A1.3.

The leading Fourth Circuit case on enhancement for physical restraint is *United States v. Stokley*, 881 F.2d 114 (4th Cir. 1989). In that case, the defendant placed explosives in a room and prevented the victim from leaving. The bomb went off, injuring both. The court enhanced the offense level by two points for physical restraint of the victim. *Stokley* is distinguishable from the facts at bar. First, the victim was confined to a room for some time. Second, detonation of explosives does not in and of itself involve physical restraint. Most bombing victims do not know of their imminent fate. It adds something to the offense that the victim had an apprehension of the expected blast and could do nothing about it because of the physical restraint. Stabbing, however, is of a different nature. The very act of stabbing normally will involve some physical restraint.

The government also relies on *United States v. Roberts*, 898 F.2d 1465 (10th Cir. 1990). In that case, defendant placed an arm around the victim's neck, held a knife to her throat, forced her to withdraw cash from a cash machine and robbed her. We need not decide whether *Roberts* represents the law of this Circuit, because the *Roberts* fact pattern differs significantly from the facts before us. First, the victim in *Roberts* was held and threatened for a long enough period to accomplish the cash withdrawal; this would appear to be some minutes. Second, robbery encompasses many fact patterns. Robbery need not involve a physical holding, and one can envision various types of robberies involving no restraint at all. If the properly considered facts had indicated that Joseph had been told that Weathers had been held for some time prior to being stabbed or that one person restrained the victim while another stabbed him, this case would more closely resemble *Roberts*.

Every murder involves the ultimate restraint. Such terminal restraint is simply an element of the crime of homicide. According to Commentary 2 to section 3A1.3, an act which is merely an element of the underlying offense does not warrant an enhancement for physical restraint. An upward adjustment for restraint is to be made in the context of an act which adds to the basic crime. Furthermore, the examples of physical restraint in the guidelines, while not all inclusive, imply that the guidelines intend an enhancement for something other than a brief holding as part of a stabbing. As these were the only facts properly before the court for purposes of defendant's sentence, the sentence may not stand.

### III. *Guideline Range Overlap*

■ Without the upward adjustment for physical restraint, the offense level would be twenty-three. The sentencing range would be forty-six to fifty-seven months.

We have made it clear that unless the court unequivocally finds that a sentence is appropriate under different guideline ranges, overlap will not prevent reversal of the sentence. *United States v. Willard*, 909 F.2d 780 (4th Cir.1990); *United States v. McCrary*, 887 F.2d 485, 489 (4th Cir. 1989) (if the sentencing court miscalculates the guideline range, a sentence which also fits into the proper range will not stand unless it is clear that the court would have imposed the same sentence under either range). There is nothing to indicate that this sentence might not have been lower had the district court used the proper guideline level. The fact that the district court chose the minimum sentence in what it thought was the applicable guideline range leaves open the possibility that it might have imposed a shorter sentence had such a sentence been within what it viewed as the proper guideline range. A simple statement that the sentence is appropriate

is not the clear statement which brings the overlapping guideline doctrine approved in *United States v. White*, 875 F.2d 427, 432–33 (4th Cir.1989), into play.

Accordingly, we find that the district court improperly calculated the guideline level. The court should not have added a two level enhancement to the offense level for restraint of the victim. The sentence is reversed and this matter is remanded to the district court for resentencing.

REVERSED AND REMANDED.

NIEMEYER, Circuit Judge, dissenting:

The issue presented is whether the district court erred in enhancing an offense level under U.S.S.G. § 3A1.3 (authorizing a two level enhancement when the victim is physically restrained) under circumstances where a fleeing victim was chased, caught, and held while he was stabbed to death. Because I conclude that restraining a victim before he is murdered is not inherent or necessary in accomplishing the murder, but rather can be an independent act which thus may be considered as an enhancing factor under the Sentencing Guidelines, the facts of restraint presented in this case were properly considered by the district court. Although the restraint was arguably brief, it was sufficiently restrictive to keep the victim from completing his flight and avoiding his brutal death, and the district court's finding that a restraint occurred was not clearly erroneous.

Joseph R. Mikalajunas, Jr., pled guilty, pursuant to a plea agreement, as an accessory after the fact to second degree murder for assisting his brother Michael and two others in covering up the evidence about the murder of Christopher Weathers. Joseph Mikalajunas assisted his younger brother and the two others involved by arranging to have the body of Christopher Weathers reburied with the intent to hinder and prevent apprehension, trial and punishment of the individuals responsible for the murder. The plea agreement provides that the final applicable offense level, with all adjustments, would be 26, but that this level was not binding on the court. J.A. 10.

The statement of facts, to which Joseph Mikalajunas agreed provides that he learned from his brother how the murder occurred and was told, in particular, that "Woolridge had struck Mr. Weathers with a baseball bat, that Mr. Weathers had attempted to flee, that he had been caught by Michael Mikalajunas and Largent, and that those two had then stabbed Mr. Weathers to death." J.A. 30. Later, describing the same facts to Detective Dirk A. Rinehart, Joseph Mikalajunas stated that his brother related to him the circumstances of the killing itself, including the fact that "Michael Mikalajunas had chased Christopher Weathers, that Michael Mikalajunas had caught Mr. Weathers, that Michael Mikalajunas had held Mr. Weathers while stabbing him, and that Mr. Mikalajunas had inflicted the wounds as described above." J.A. 43. While this version, which uses the word "held," is not significantly different from that agreed to by Joseph Mikalajunas in his plea agreement, Joseph Mikalajunas argues that it was given as part of his cooperation and should not be used, although he did not object to its use before the district court. The argument is not of great moment to the issue presented here because, even if the statement to Detective Rinehart were not considered, I would conclude that a fleeing victim who is caught from behind by two persons and stabbed is necessarily "held."

At sentencing, the district court concluded that the appropriate sentencing guideline level was 25 (one level under that agreed to by the defendant). He reached that level by beginning with a base offense level for second degree murder of 33 (U.S.S.G. § 2A1.2), adding two levels because the victim was restrained, subtracting six levels because the defendant was charged as an accessory after the fact, subtracting two levels for acceptance of responsibility, and finally subtracting two levels pursuant to a motion made under U.S.S.G. § 5K1.1 for the defendant's cooperation. Thus, even with the two point enhancement, the defendant was sentenced at a level below that to which he agreed in his plea agreement.

In objecting to the two-level enhancement imposed because of the restraint of the victim under U.S.S.G. § 3A1.3, counsel for the defendant argued to the court that restraint was inherent in the crime itself and therefore could not be added as a separate factor. He argued "how much more can you restrain a person than to kill him. I mean, is there no more ultimate restraint? What is second degree murder? It is taking someone and killing them. Isn't that the ultimate restraint? So how are you going to add two more points in, Your Honor?" The majority opinion shares this view. Counsel also argued that the victim must be "tied, bound, or behind bars" to be consistent with the definition of "physically restrained" given in U.S.S.G. § 1B1.1(i), that the victim be "tied, bound, or locked up." J.A. 47.

The argument that restraint is inherent in the base offense charged here, second degree murder, is not consistent with various conceivable factual scenarios of second degree murder, such as when the victim is shot from a distance, or when the victim is stabbed from behind, or even from the front without any form of restraint. The enumerable possibilities of a killing which do not involve restraint lead to the conclusion that restraint is not of necessity inherent in the offense. Similarly, when a victim is tied, gagged, and then shot, restraint can be identified as additional conduct, separate from the act of murder. Because restraint can thus describe additional conduct leading up to a murder, it can be considered as an enhancing factor under U.S.S.G. § 3A1.3.

The question becomes one of whether the facts presented in this case permit a finding by the district court that restraint, other than the act of murder, was involved. There is no real controversy over the fact that the victim, Christopher Weathers, was chased down while fleeing, caught, held and stabbed repeatedly until his death. Because we do not know which particular stabbing blow actually caused death, however, we cannot speculate as to how long the restraint occurred. We can conclude, and I do conclude, that when a victim is fleeing, is caught from behind, and is held

for the purpose of being stabbed, he is completely denied his liberty before death because, despite his will to flee, he is prevented from fleeing. The complete effectiveness of the restraint, albeit momentary, in my judgment satisfies U.S.S.G. § 3A1.3, and I would conclude that the district judge did not err in making that finding.

Although the defendant argues that the definition of restraint is specifically restricted by U.S.S.G. § 1B1.1(i) to mean "restraint of the victim such as by being tied, bound or locked up," the examples given in the definition are just examples and other forms of restraint are clearly intended. *See United States v. Roberts*, 898 F.2d 1465, 1470 (10th Cir.1990) (restraint found where victim held from the rear at knife point and ordered to make withdrawals from an automatic teller machine); *United States v. Tholl*, 895 F.2d 1178, 1184–85 (7th Cir.1990) (restraint found where victim driven around the city in a car pursuant to a bogus arrest by the defendant who impersonated a DEA officer); *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir.1989) (restraint found where victim was shoved into a room where the defendant had placed explosives). In none of these examples was the victim tied, bound, or locked up. In short, as we said in *Stokley*, the types of physical restraints enumerated in the definition given in U.S.S.G. § 1B1.1(i) are "listed by way of example rather than limitation." 881 F.2d at 116.

Because the offense of second degree murder, the base offense here, does not of necessity embrace a physical restraint that might occur before death, and because substantial facts were presented here to support the district court's finding of a restraint, I would affirm.

I respectfully dissent.