**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 97-4817

COREY ALLEN WILSON, a/k/a Jugs,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
N. Carlton Tilley, Jr., Chief District Judge.
(CR-96-154)

Argued: October 26, 1999

Decided: December 2, 1999

Before LUTTIG and MOTZ, Circuit Judges, and HAMILTON,
Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Hamilton wrote the
opinion, in which Judge Luttig and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** William Stimson Trivette, Assistant Federal Public
Defender, Greensboro, North Carolina, for Appellant. Michael Fran-
cis Joseph, Assistant United States Attorney, Greensboro, North Car-
olina, for Appellee. **ON BRIEF:** Louis C. Allen, III, Federal Public
Defender, Greensboro, North Carolina, for Appellant. Walter C. Hol-
ton, Jr., United States Attorney, Greensboro, North Carolina, for
Appellee.

**OPINION**

HAMILTON, Senior Circuit Judge:

Following a two-day jury trial, Corey Allen Wilson (Wilson) was convicted of carjacking, and aiding and abetting the same, see 18 U.S.C. §§ 2, 2119, carrying and using a firearm during and in relation to a crime of violence, and aiding and abetting the same, see id. §§ 2, 924(c), and transporting a stolen vehicle in interstate commerce, and aiding and abetting the same, see id. §§ 2, 2312. On appeal, Wilson contends that: (1) the district court erred in instructing the jury that the intent element of carjacking could be satisfied upon a finding of conditional intent; (2) there is insufficient evidence in the record to support his carjacking conviction; and (3) the district court erred in sentencing him when it applied a two-level enhancement to his offense level for physical restraint of a person to facilitate commission of a carjacking, see U.S. Sentencing Guidelines Manual (USSG) § 2B3.1(b)(4)(B). Because each of Wilson's contentions lacks merit, we affirm.

I

In January 1996, Wilson was introduced to Brian Lovell Gilbert (Gilbert) in Winston-Salem, North Carolina. As they became acquainted, Wilson and Gilbert began to discuss various ways to earn quick cash and different modes of transportation to Williamsport, Pennsylvania, which was Wilson's home town. In early February 1996, Wilson and Gilbert agreed to steal a car for the purpose of traveling to Williamsport.

On the night of February 3, 1996, Wilson and Gilbert were at a gas station in Winston-Salem where they observed a woman drive up in her car. The woman exited her car, entered the gas station's convenience store to purchase cigarettes, exited the convenience store, entered her car, and drove off. Five minutes later, Wilson and Gilbert saw the woman return to the gas station in her car. At this point, Wilson said to Gilbert, "she must be wanting to get--she must be wanting her car taken." (J.A. 74). Wilson then gave Gilbert a .25 caliber handgun and told Gilbert to "go ahead" and get the car. Id.

2

Gilbert approached the woman while she was in her car, pointed the gun at her, and directed her to get out of her car. The woman replied that she could not comply with Gilbert's command because her baby was in the car. In response, Gilbert instructed the woman to grab her baby and get out of the car. After the woman complied with this request, Wilson and Gilbert entered the car and drove to the Salem Gardens housing project. Shortly thereafter, the police recovered the car.

On the evening of February 6, 1996, Julie Lutz was driving her car in Winston-Salem when she saw Wilson and Gilbert waving for her to stop. After Lutz stopped her car, Wilson told Gilbert, "we're gonna get this car right here." (J.A. 77). As Wilson and Gilbert approached Lutz's car, Wilson told Lutz that it was cold, that they were a long way from home, and that they needed a ride. Lutz agreed to give Wilson and Gilbert a ride.

Wilson got in the front passenger seat of Lutz's car, and Gilbert sat behind Lutz. At some point during the ride, Wilson handed the .25 caliber handgun to Gilbert. After five to ten minutes of travel, Gilbert placed the gun to the side of Lutz's head and told her to pull over, which Lutz did. Wilson told Lutz to get out of the car and hand over all the money she had. Lutz then gave Wilson and Gilbert all the money in her purse and exited the car. After taking Lutz's car, Wilson and Gilbert drove to Williamsport, where they were arrested on February 13, 1996.

On July 30, 1996, Wilson and Gilbert were indicted by a federal grand jury sitting in the Middle District of North Carolina on three counts. All three counts of the indictment stemmed from Wilson and Gilbert's carjacking of Lutz's car. Count one charged Wilson and Gilbert with carjacking, and aiding and abetting the same, see 18 U.S.C. §§ 2, 2119. Count two charged Wilson and Gilbert with carrying and using a firearm during and in relation to a crime of violence, and aiding and abetting the same, see id. §§ 2, 924(c). Count three charged Wilson and Gilbert with interstate transportation of a stolen vehicle, and aiding and abetting the same, see id. §§ 2, 2312.

Prior to trial, Gilbert pled guilty and agreed to testify for the government. Following a two-day jury trial, the jury convicted Wilson on

3

all three counts. The district court sentenced Wilson to 197 months' imprisonment. Wilson noted a timely appeal.

II

Wilson's first argument is that the district court erred in its instruction to the jury concerning one of the elements of the offense of carjacking. We review the district court's jury instructions in their entirety and as part of the whole trial, see United States v. Lowe, 65 F.3d 1137, 1146 (4th Cir. 1995), and focus on whether the district court adequately instructed the jury regarding the elements of the offense and the defendant's defenses. See United States v. Fowler, 932 F.2d 306, 317 (4th Cir. 1991). The district court's decision on jury instructions is reviewed for an abuse of discretion. See United States v. Lozano, 839 F.2d 1020, 1024 (4th Cir. 1988).

A person commits the offense of carjacking if he or she "with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so." 18 U.S.C. § 2119. Wilson argues that the district court erred when it instructed the jury that the intent to cause death or serious bodily harm element of carjacking could be satisfied if the jury found that he "intended to cause death or serious bodily harm if the person from whom the vehicle was taken did not relinquish it." (J.A. 157). According to Wilson, this type of "conditional intent" is insufficient because it renders the intent requirement virtually indistinguishable from the by force and violence or by intimidation element of carjacking. Wilson posits that the district court should have instructed the jury that he could be convicted of carjacking only if he had an unconditional intent "to cause death or serious bodily injury whether or not [Lutz] relinquished her car." (J.A. 21).

While this appeal was pending, the Supreme Court decided Holloway v. United States, 119 S. Ct. 966 (1999). In Holloway, the jury was instructed that the intent element of carjacking was satisfied if the defendant "intended to cause death or serious bodily injury if the alleged victims had refused to turn over their cars." Id. at 968. Before the Supreme Court, the defendant argued that the carjacking

4

statute required the government to prove that he had an unconditional intent to cause death or serious bodily injury whether or not the victims relinquished their cars. The Court rejected this argument, holding that evidence of conditional intent satisfies the intent element of carjacking, though the Court emphasized that "the intent element requires the [g]overnment to prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." Id. at 972.

In this case, the district court's instruction on conditional intent complied with Holloway. Like Holloway , the district court instructed the jury that the intent element of carjacking was satisfied if the government proved that the defendant intended to cause serious bodily injury or death if the victim refused to relinquish her car. Because there is no meaningful difference between the conditional intent instruction upheld in Holloway and the conditional intent instruction given by the district court in this case, Wilson's challenge to the district court's instruction on intent must be rejected.

III

Wilson's second argument is that even under the conditional intent standard there is insufficient evidence in the record to support the jury's verdict because there is no evidence in the record demonstrating that he and Gilbert intended to cause serious bodily injury or death to Lutz if she refused to relinquish her car. This argument is without merit.

Our sufficiency of the evidence standard of review is well-settled. The jury's verdict must be upheld on appeal if there is substantial evidence in the record to support it. See Glasser v. United States, 315 U.S. 60, 80 (1942). In determining whether the evidence in the record is substantial, we view the evidence in the light most favorable to the government and inquire whether there is evidence that a "reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 519 U.S. 1151 (1997).

5

In this case, there is substantial evidence in the record demonstrating that Wilson and Gilbert intended to cause serious bodily injury or death to Lutz if she refused to relinquish her car. Gilbert testified that if Lutz had resisted he and Wilson "probably would have beat her, dragged her, might have even shot her." (J.A. 100). Gilbert also testified that he and Wilson would have done whatever it took to overcome Lutz's resistance, including the use of deadly force. This evidence constitutes substantial evidence to support the jury's finding that Wilson and Gilbert intended to cause serious bodily injury or death to Lutz if she refused to relinquish her car. See Holloway, 119 S. Ct. at 972.

IV

Wilson's final argument is that the district court erred in sentencing him when it applied a two-level enhancement to his offense level for physical restraint of a person to facilitate commission of a carjacking pursuant to USSG § 2B3.1(b)(4)(B). Wilson's principal objection to the district court's application of the USSG § 2B3.1(b)(4)(B) enhancement is that there is insufficient evidence in the record demonstrating that he physically restrained Lutz. We disagree.

The sentencing guideline applicable to carjacking is the Robbery Guideline, USSG § 2B3.1, under which the base offense level is twenty, see USSG § 2B3.1(a). Because Wilson's offense involved carjacking, his base offense level was increased by two levels pursuant to USSG § 2B3.1(b)(1)(B) ("If . . . the offense involved carjacking, increase by **2** levels."). Because Lutz was physically restrained to facilitate the commission of the carjacking, the district court increased Wilson's offense level two levels pursuant to USSG § 2B3.1(b)(4)(B) ("if any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by **2** levels"). Because the loss exceeded $10,000 but was $50,000 or less, Wilson's offense level was increased by one level pursuant to USSG § 2B3.1(b)(6)(B). Wilson's offense level of twenty-five, coupled with a criminal history category of VI, yielded a guideline range of 110-137 months. The district court sentenced Wilson to 137 months on the carjacking count. Wilson also received a mandatory sixty-month consecutive sentence for his carrying and using a firearm during and in relation to a crime of violence, and aiding and abetting the same.

6

In deciding to apply the USSG § 2B3.1(b)(4)(B) enhancement, the district court stated:

> [T]he physical restraint is not duplicitous of any element in the definition of the offense, so it is not being double counted, because physical restraint is not necessarily proven to constitute a violation of the offense stated in 2119.
>
> In this case there was a restraint when the gun was pulled, the car was stopped, she was held long enough to have taken her money, and then forced out of the car. So for a period of time, albeit short, she was physically restrained, and then put out of the car as she--in an effort to facilitate the offense of taking the car. So the court finds that the enhancement of two levels is appropriate . . . .

(J.A. 316-17).

In reviewing the application of the sentencing guidelines by the district court, we examine factual determinations for clear error. See United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995). However, legal questions are subject to the de novo standard of review. See id.

USSG § 2B3.1.(b)(4)(B) provides for a two-level enhancement "if any person was physically restrained to facilitate commission of the offense." USSG § 1B1.1(i), to which application note 1 of USSG § 2B3.1 refers, provides that "`physically restrained' means the forcible restraint of the victim such as being tied, bound, or locked up." We have held that "[p]hysical restraint" is not limited to the examples listed in USSG § 1B1.1(i). See United States v. Stokley, 881 F.2d 114, 116 (4th Cir. 1989) ("By use of the words `such as,' it is apparent that `being tied, bound, or locked up' are listed by way of example rather than limitation.").

A physical restraint enhancement is proper under USSG § 2B3.1.(b)(4)(B), or under the analogous Restraint of Victim Guideline, USSG § 3A1.3 ("If a victim was physically restrained in the course of the offense, increase by **2** levels."), if the act of physical restraint "adds to the basic crime." United States v. Mikalajunas, 936

7

F.2d 153, 156 (4th Cir. 1989). For example, in Stokley, the defendant placed a bomb in a room in which the defendant and the victim were present, and the defendant prevented the victim from leaving the room. See 881 F.2d at 115. The bomb exploded, injuring both the defendant and the victim. See id. The defendant pled guilty to destroying by explosives property affecting interstate commerce resulting in personal injury, and, at sentencing, the district court applied the two-level enhancement for physical restraint of a victim pursuant to USSG § 3A1.3. See Stokley, 881 F.2d at 115. On appeal, we upheld the application of the enhancement because the physical restraint in that case "was not an element of the offense, was not specifically incorporated into the base offense level and was not listed as a specific offense characteristic, any of which would have rendered the guideline inapplicable." Id. at 116.

In contrast to Stokley, we declined to uphold the application of the physical restraint enhancement under USSG § 3A1.3 in Mikalajunas. See Mikalajunas, 936 F.2d at 156. In that case, the defendant pled guilty to being an accessory after the fact to second degree murder. See id. at 154. During the commission of the offense, the defendant's brother held the victim while stabbing him. See id. at 155. We declined to uphold the physical restraint enhancement contained in USSG § 3A1.3 because "[e]very murder involves the ultimate restraint[, and s]uch terminal restraint is simply an element of the crime of homicide." Mikalajunas, 936 F.2d at 156.

In this case, the district court properly applied the USSG § 2B3.1(b)(4)(B) physical restraint enhancement. A gun was held to Lutz's head, and she was prevented from leaving her car, albeit briefly, until Wilson and Gilbert were able to get her money and gain control of her car. Under these circumstances, unquestionably, Lutz was physically restrained to facilitate the commission of the carjacking. In reaching this result, we note that physical restraint is not an element of carjacking, as carjacking does not necessarily involve physical restraint, and one can envision various carjacking scenarios involving no physical restraint at all. Indeed, the February 3, 1996 carjacking, for which Wilson and Gilbert were apparently not charged, involved no physical restraint. We also note that physical restraint is not specifically incorporated into the base offense level for robbery; rather it is a specific offense characteristic of the Robbery

8

Guideline that must be applied unless its application is expressly pro-hibited. See United States v. Williams, 954 F.2d 204, 206 (4th Cir. 1992) (noting that the sentencing guidelines should be applied "as

written").*

V

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

_____

*Secondarily, Wilson argues that because he received a mandatory sixty-month consecutive sentence on the § 924(c) count, the application of the physical restraint enhancement under USSG§ 2B3.1(b)(4)(B) resulted in impermissible double counting. This argument is without merit. We have emphasized repeatedly that the sentencing guidelines should be applied "as written." Williams , 954 F.2d at 206. To effectuate this principle, "double counting" is permissible under the sentencing guidelines except where it is expressly prohibited. See United States v. Crawford, 18 F.3d 1173, 1179 (4th Cir. 1994). In this case, the sentenc-ing guidelines were applied as written and, therefore, there was no impermissible double counting. Wilson's argument would carry consid-erable force if he had received an enhancement for using a firearm during the commission of the carjacking. See USSG§ 2B3.1(b)(2) (providing that a defendant's offense level can be increased if a firearm was dis-charged, used, or possessed). If Wilson had received an enhancement under this section, we would have to vacate Wilson's sentence. See USSG § 2K2.4 comment. (n.2) (expressly forbidding the application of gun enhancements when the defendant has been convicted of a § 924(c) offense). However, in this case, the district court did not apply the USSG § 2B3.1(b)(2) gun enhancement.