UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

CHARLES JAMES PAYTON,
          *Defendant-Appellant.*

No. 02-4273

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, District Judge.
(CR-01-17-HO)

Argued: January 23, 2003

Decided: February 10, 2003

Before WILLIAMS and MOTZ, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Thomas Kieran Maher, RUDOLF, MAHER, WIDEN-HOUSE & FIALKO, Chapel Hill, North Carolina, for Appellant. Christine Witcover Dean, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Charles Payton, convicted of conspiracy and assisting in the prepa-
ration of false tax returns, appeals his conviction and sentence. Find-
ing no reversible error, we affirm.

I.

Payton is not an accountant or lawyer. In 1996, however, he left his
job at an automobile manufacturing company and opened a conve-
nience store, in the back of which he started a tax preparation busi-
ness. Payton developed a reputation in the community for obtaining
refunds through amended tax returns, and this case arises out of seven
of those amended returns.

At trial, several taxpayers recounted a similar story: Payton pre-
pared amended tax returns for them, which yielded substantial
refunds, and for his services, Payton charged the taxpayers a percent-
age (usually between ten and twenty-five percent) of the amount
refunded. The amended returns reflected increased deductions for
medical and employment expenses and charitable contributions; but
the taxpayers testified that they provided Payton with no basis for
increasing the deductions, almost invariably only giving him their
original returns.

Payton's co-defendant, Ollie Maye, testifying pursuant to a plea
agreement, explained how Payton came up with the figures for the
increased deductions. Maye recounted that Payton directed him to use
percentages of a taxpayer's adjusted gross income, such as twenty
percent for medical expenses and ten percent for charitable contribu-
tions. This practice often resulted in identical figures for a given
deduction for multiple taxpayers and for individual taxpayers for mul-
tiple years. For example, the IRS agent in charge of the investigation

explained that he reviewed over 500 amended returns from Payton's tax service, and many returns used the figures $6998 and $8998 for medical expenses.

According to the taxpayers, to alleviate their concerns about the legitimacy of the deductions, Payton often told them that he had previously worked for the IRS. At trial, Payton denied making such statements; he also denied preparing amended returns without proper documentation or consultation. He suggested that any errors in the returns were due to false information from the taxpayers.

The jury convicted Payton of one count of conspiracy, in violation of 18 U.S.C.A. § 371 (2000), and seven counts of assisting in the preparation of a false tax return, in violation of 26 U.S.C.A. § 7206(2) (2002). The district court sentenced him to 78 months imprisonment, three years of supervised release, and restitution.

## II.

Payton attacks his convictions on three grounds.

## A.

First, Payton contends that the district court committed plain error by interrupting defense counsel's cross-examination of Maye and the direct examination of Payton himself. The Federal Rules of Evidence provide that a court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of the truth," Fed. R. Evid. 611(a), and "may interrogate witnesses, whether called by itself or by a party." Fed. R. Evid. 614(b).

In this case, the two isolated statements made by the district court fall well within the province of its authority under these rules. In response to defense counsel's cross-examination of Maye, the district court reasonably explained the complex nature of sentencing under the Sentencing Guidelines, so as to correct the potential misimpression left by defense counsel regarding the effect of Maye's plea agreement on his sentence. The court also acted reasonably in direct-

ing defense counsel to ask Payton how he arrived at medical expenses for one taxpayer in excess of $10,000 for three years in a row, in light of the fact that the taxpayer had health insurance through his employer.

A district court has a "duty to ensure that the facts are properly developed and that their bearing upon the question at issue are clearly understood by the jury." *United States v. Castner*, 50 F.3d 1267, 1272 (4th Cir. 1995) (internal quotation marks omitted). The district court properly carried out that duty here, and we find no error.

### B.

Second, Payton argues that the district court abused its discretion, under Federal Rule of Evidence 608, in permitting the government to cross-examine him about his failure to file his own tax returns from 1997 through 2000. Payton contends that failure to file tax returns, without additional proof of dishonest intent or willfulness, is not probative of truthfulness. Even if the district court erred in permitting the cross-examination, we find the error harmless. *See* Fed. R. Crim. P. 52(a). We do so both because Payton was permitted to explain to the jury that he failed to file his taxes for an innocent reason, namely the destruction of his documentation in a flood, and because of the overwhelming evidence of Payton's guilt. *See United States v. Weaver*, 282 F.3d 302, 314 (4th Cir. 2002) ("[E]vidence was harmless in light of the overwhelming evidence against the defendant.").

### C.

Finally, Payton contends that the district court erred in excluding proffered defense witnesses who would have testified that "defendant acted in a professional manner in preparing their [tax] returns"; Payton maintains on appeal that this testimony constituted proper habit evidence admissible under Federal Rule of Evidence 406. We review this claim for plain error, because Payton only argued to the district court that these witnesses should be admitted under Federal Rule of Evidence 404(b) and did not seek their admission under Rule 406. *See United States v. Parodi*, 703 F.2d 768, 783 (4th Cir. 1983).

In deciding whether to admit evidence under Rule 406, "courts consider three factors: (1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct." *United States v. Angwin*, 271 F.3d 786, 799 (9th Cir. 2001); *cf. Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 511 (4th Cir. 1977) ("It has been repeatedly stated that habit or pattern of conduct is never to be lightly established, and evidence of examples, for purpose of establishing such habit, is to be carefully scrutinized before admission.").

In this case, Payton's proffered habit evidence was not reflexive or semi-automatic. Rather, he had complete freedom to decide the manner in which he prepared returns, including the amount of documentation he required and how much attention he paid to any available documentation. Moreover, the conduct of preparing tax returns can be quite general — covering a wide range of practices and routines. Accordingly, we find no error.

### III.

Payton also challenges his sentence on three grounds.

### A.

Payton initially contends that the district court erred when it took "the position that a defendant who objects" to a Sentencing Guidelines adjustment or enhancement "runs the risk of receiving a higher increase, while one who does not object does not run this risk." Once again, we review for plain error because Payton never raised this objection before the district court.

Payton bases this argument on the following statements made by the district court at the sentencing hearing. The court stated at the outset of the sentencing hearing:

> I'll go ahead and advise you on objections that involve calculations and so forth, once the objection is made and I begin to hear the objection, if the matter goes higher than

what's there [in the presentence report (PSR)], that's your problem, not mine.

Payton objected to the recommendation in the PSR that he receive a two-level adjustment for a leadership role in the offense, pursuant to U.S.S.G. § 3B1.1(c), based on his leadership of Maye; the court then asked the government whether it viewed the people who used the tax service as participants. The government responded that "that would have been something that [it] wish[ed] [it] had pressed further." The court responded:

It's now on the floor; Mr. Maher [defense counsel] opened it up. . . . You [defense counsel] brought this matter out about role in the offense.

After hearing argument from both sides, the court concluded:

The court, by virtue of it being brought to its attention, believes the probation officer incorrectly assigned this.

The court then assigned a four-level increase under § 3B1.1(a) rather than the recommended two-level increase under § 3B1.1(c).

Regardless of whether or not the defendant or the government objects to the proposed findings in a PSR, the district court has a "separate obligation" to make "independent factual findings" and Guidelines calculations. *United States v. Love*, 134 F.3d 595, 605 (4th Cir. 1998); *cf.* Fed. R. Crim. P. 32(i)(3)(A) (2002) ("At sentencing, the court *may* accept any undisputed portion of the presentence report as a finding of fact[.]" (emphasis added)).

In this case, although the district court's choice of words was unfortunate, the record does not establish that the court intended to convey to Payton that if he *did not object* to the PSR, the court would accept the recommendations, but if he *did object*, the court would consider increased calculations or adjustments. Of course, such a practice would improperly chill a defendant's right to object to PSR recommendations. *See* Fed. R. Crim. P. 32(f), (i). Because Payton did not advise the district court of his present challenge to the court's

comments and the record does not offer any clear support for this challenge, we find no plain error here.

## B.

Payton also challenges the district court's application of the four-level leadership adjustment under U.S.S.G. § 3B1.1(a).

He argues that the district court erroneously counted the taxpayers as "participants" in the offense in applying § 3B1.1(a)'s four-level adjustment. Under § 3B1.1(a), the offense level should be increased by four levels if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Application note 1 to § 3B1.1 provides that a "'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." Moreover, application note 3 provides that in "assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive."

The district court found that "300 plus people were participants" and the criminal activity "was extensive." The court also noted that the government gave some of the taxpayers immunity from prosecution. Indeed, in opening statements, defense counsel characterized the taxpayers and Payton as equally culpable: "The first thing you need to realize is these taxpayers do not have clean hands. If Mr. Payton is guilty of anything, these taxpayers are just as guilty. But the government in getting them to testify has granted them immunity." Given this evidence, the district court did not clearly err in finding five or more "participants" in the criminal activity and that this activity, which Payton led, was "otherwise extensive."

## C.

Alternatively, Payton contends that the court engaged in impermissible "double counting" in applying both a specific offense two-level increase under § 2T1.4(b)(1)(B) and the leadership adjustment under

§ 3B1.1(a). We review this claim for plain error because Payton did not object below.[1]

The district court applied a two-level specific offense increase, under § 2T1.4(b)(1)(B), because Payton was "in the business of preparing or assisting in the preparation of tax returns." As discussed *supra*, Payton also received a four-level increase under § 3B1.1(a), for his leadership role in "a criminal activity that involved five or more participants or was otherwise extensive." Payton argues that virtually every person in the business of preparing tax returns will have more than five customers, so those receiving the specific offense characteristic of § 2T1.4(b)(1)(B) will also always receive the adjustment under § 3B1.1(a).[2]

The guidelines do not expressly prohibit application of both § 2T1.4(b)(1)(B) and § 3B1.1(a). We have "emphasized repeatedly that the sentencing guidelines should be applied as written. . . . To effectuate this principle, double counting is permissible under the sentencing guidelines except where it is expressly prohibited." *See United States v. Wilson*, 198 F.3d 467, 472 n.* (4th Cir. 1999) (internal quotation marks and citations omitted). Thus, we find no error.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[1]Payton did not raise his "double counting" argument in his written objections to the PSR or in regard to the adjustment under § 3B1.1. In asking the district court to sentence him to the bottom of the guidelines range, he stated that the two-level enhancement under § 2T1.4(b)(1)(B) and the four-level adjustment under § 3B1.1(a) "may or may not be technically double counting." This equivocal statement, made not in the form of an objection but in the form of an argument for sentencing at the bottom of the guidelines range, did not adequately preserve Payton's present objection.

[2]As the government notes, however, Maye qualified for the specific offense characteristic of being in the tax preparation business but not for any leadership role adjustment.