UNITED STATES of America,
Plaintiff,

v.

Keith Andrew LILLY, Defendant.

Crim.A. No. 2:03–00129–1.

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 1, 2003.

L. Anna Crawford, Assistant United States Attorney, Charleston, WV, for United States.

Leah R. Boggs, Adams & Fisher, Ripley, WV, for Keith Andrew Lilly.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

On June 23, 2003, the defendant, Keith Andrew Lilly, pled guilty to two counts of

Aiding and Abetting in the Armed Robbery of a Mail Custodian, in violation of 18 U.S.C. §§ 2114(a) (2003). The probation office then conducted a presentence investigation and prepared a Presentence Investigation Report (PSR). The defendant made two objections to the PSR. First, the defendant objected to the application of a six level increase to his base offense level made pursuant to § 2B3.1.(b)(2) of the United States Sentencing Guidelines. United States Sentencing Commission, *Guidelines Manual,* § 2B3.1.(b)(2) (Nov. 2002) (USSG or Guidelines). Under § 2B3.1.(b)(2), a defendant's offense level is increased by six "if a firearm is otherwise used" in the commission of a robbery. USSG § 2B3.1.(b)(2). The court **FINDS** that the defendant "otherwise used" a firearm when he pointed a gun at the victim and used the gun to coerce and to threaten the victim. *See id.* Therefore, the PSR correctly increased the defendant's offense level by six. *See id.* Second, the defendant objected to the application of a two-level increase to Count One for "restraint of the victim." USSG § 2B3.1.(b)(4)(B). The court **FINDS** that the defendant's act of pointing a gun at the victim during a robbery did not constitute "physical restraint" of the victim within the meaning of USSG § 2B3.1.(b)(4)(B). Therefore, as to Count One, the PSR's application of the two-level increase for physical restraint was incorrect.

## I. Facts

The events alleged in Count One occurred on July 3, 1998. On that date, the defendant and David Banks robbed Kenneth J. Gillespie, an individual contracted by the United States Postal Service to transport official office remittances. Official office remittances are daily bank deposits for the United States Post Office and include cash, checks, and money orders. The robbery occurred just as Mr. Gillespie started to leave the post office to make his final stop of the day. The defendant appeared in the doorway, pointed a loaded 9mm handgun at Mr. Gillespie, and ordered him to get down on the floor and put his head against a wall. Mr. Banks then took the registered mail bags from Mr. Gillespie's vehicle. The defendant told Mr. Gillespie that a boy was watching from the hill behind the post office and ordered him to stay on the floor for 15 minutes. The defendant also warned Mr. Gillespie, "Your wife's name is Cathy and I know where you live."

The events alleged in Count Two occurred on February 3, 2000. The defendant, together with Mr. Banks and James Stevenson Lynch, robbed Charles E. Singleton, a driver for the same contract postal route. At approximately 6:50 PM, as Mr. Singleton left the post office, Mr. Lynch pointed a gun at him and ordered him to the ground. Mr. Lynch then tied Mr. Singleton's hands behind him with plastic pull ties and removed the containers of postal remittances from the rear of the post office. Meanwhile, Mr. Banks removed the registered mail items from the postal truck. During the robbery the defendant was inside of the post office. The court FINDS that Mr. Lynch's acts of pointing a gun at Mr. Singleton, ordering Mr. Singleton to the ground, and tying Mr. Singleton's hands with twist ties were reasonably foreseeable in the context of the robbery jointly undertaken by the defendant, Mr. Banks, and Mr. Lynch. Thus, these actions are attributed to the defendant for sentencing purposes.

Counts One and Two are the products of factually distinct occurrences. Under the Guidelines, the defendant's sentence for both counts must be calculated by applying the offense guideline for "Robbery, Extortion, and Blackmail" set forth in § 2B3.1. USSG § 2B3.1. Although the two counts are similar in nature,

§ 3D1.2(d) specifically prohibits the grouping of offenses covered by § 2B3.1. USSG § 3D1.2(d). Thus, for sentencing purposes the facts of each count must be considered separately. In addition, each count occurred as part of a joint criminal activity. "[A] defendant who undertakes a joint criminal activity is accountable, for sentencing purposes, for the reasonably foreseeable conduct of the others involved in furtherance of the jointly undertaken criminal activity." *United States v. Harrison,* 272 F.3d 220, 223 (4th Cir.2001) (citing USSG § 1B1.3). Therefore, the defendant is accountable for the reasonably foreseeable conduct of all others involved in perpetrating the armed robberies.

## II. Discussion

### A. Application of "Otherwise Used" classification under USSG § 2B3.1.(b)(2)

Section 2B3.1 states that the base offense level for robbery is twenty and then provides a list of seven "Specific Offense Characteristics" that, when applicable, increase the offense level of a particular robbery depending on the characteristics of that robbery. USSG § 2B3.1. One of the seven offense characteristics is based on the use of a weapon:

> If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished, displayed, or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels. USSG § 2B3.1.(b)(2).

The issue here is whether the defendant's act of pointing a gun at Mr. Gillespie and Mr. Lynch's act of pointing a gun at Mr. Singleton, as attributed to the defendant, fall within the definition of "otherwise used" or "brandished." The terms "otherwise used" and "brandished" are defined in the commentary to § 1B1.1. USSG §§ 1B1.1, comment. (n.1(c),1(f)); 2B3.1.(b)(2). " 'Otherwise used' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." USSG § 1B1.1, comment. (n.1(f)). " 'Brandished' with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person, pointed or waved about, or displayed in a threatening manner." USSG § 1B1.1, comment. (n.1(c)).

Given that the Guidelines define "otherwise used" as conduct that does "not amount to discharge" but is "more than brandishing," the meaning of otherwise used can only be determined by considering these two reference points. *Id.* at § 1B1.1, comment. (n.1(c),1(f)). Neither the defendant nor anyone else who perpetrated the robberies discharged a weapon, and thus the conduct at issue clearly "[does] not amount to discharge." *Id.* at § 1B1.1, comment. (n.1(f)). "Brandished" has been construed as the use of a weapon in a manner that creates a generalized threat of harm. *United States v. Gilkey,* 118 F.3d 702, 705–06 (10th Cir.1997). In distinguishing "brandished" from "otherwise used" courts have focused on whether the weapon was waived about in the presence of others (brandished), or whether use of the weapon was directed at a particular individual (otherwise used). *See Gilkey,* 118 F.3d at 705–06; *United States v. Fuller,* 99 F.3d 926, 927 (9th Cir.1996).

Nearly all of the circuits faced with this issue have found that the act of pointing a gun at a person in conjunction with a specific threat of harm falls within the Guideline's definition of "otherwise used." *See, e.g., United States v. Warren,* 279 F.3d 561, 563 (7th Cir.2002) (finding that gun was otherwise used when defendant pointed it at a teller and ordered the teller into the bank); *United States v. Yelverton,* 197 F.3d 531, 533–34 (D.C.Cir.1999) (finding that gun was otherwise used when defendant pointed the gun at son's head in photograph, displayed photograph to his mother, and made threats to son's safety); *Gilkey,* 118 F.3d at 705 (finding that gun was otherwise used when defendant pointed it at victim and demanded money); *United States v. Fuller,* 99 F.3d 926, 927 (9th Cir.1996) (finding that gun was otherwise used when defendant pointed it at bank tellers's head, pulled her into standing position, and ordered her not to move); *United States v. Johnson,* 931 F.2d 238, 240–41 (3rd Cir.1991) (finding that gun was otherwise used when defendant leveled it at the victim's head and explicitly threatened victim). *But see United States v. Matthews,* 20 F.3d 538, 554 (2d Cir.) (finding that robbers' act of pointing guns at people and ordering them to lie on the floor fell within the definition of "brandish"). In an unpublished table opinion, the Fourth Circuit followed the majority of circuits cited above by affirming the district court's application of the six level increase when the defendant held a gun to the victim's head and threatened to "blow her head off." *See U.S. v. Tilley,* 163 F.3d 600, 1998 WL 654441 *1 (4th Cir.1998).

■ Here, the defendant pointed a gun at Mr. Gillespie, ordered him to the floor, and explicitly threatened to harm Mr. Gillespie and his family. Mr. Lynch pointed a gun at Mr. Singleton, ordered him to the ground, and tied his hands behind his back. These actions occurred during the commission of an armed robbery. Both the defendant and Mr. Lynch pointed a gun toward a specific individual, and both used the immediate threat of harm posed by the presence of the gun to coerce the individuals to act. The court **FINDS** that the actions of the defendant and Mr. Lynch fall within the guideline's definition of "otherwise used." Accordingly, the six level enhancement set forth in § 2B3.1.(b)(2) applies to both Count One and Count Two. USSG § 2B3.1.(b)(2).

## B. Restraint Enhancement

Section 2B3.1.(b)(4)(B) provides that two levels shall be added to the base level offense for robbery "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." USSG § 2B3.1.(b)(4)(B). The term "physically restrained" is defined in the commentary to § 1B1.1 as "the forcible restraint of the victim such as by being tied, bound, or locked up." USSG § 1B1.1, comment. (n.1(h)). Mr. Lynch's act of tying Mr. Singleton's hands behind his back with plastic pull ties indisputably constitutes physical restraint within the meaning of § 1B1.1, comment. (n.1(h)). As to Count Two, however, the defendant argues that his actions relative to Mr. Gillespie did not constitute physical restraint, and thus, the PSR incorrectly applied the two level increase to Count One.

The Fourth Circuit has held that the term "physical restraint" is not limited to the examples provided in USSG § 1B1.1, comment. (n.1(h)). *United States v. Wilson,* 198 F.3d 467, 471 (4th Cir.1999); *United States v. Stokley,* 881 F.2d 114, 115–16 (4th Cir.1989). In *Stokley,* the court held that the defendant physically restrained the victim when he ordered the victim into a bedroom at knife point, lit a pipe bomb, placed the bomb by the bedroom door, and prevented the victim from exiting the bedroom by shoving her away

from the door. *Stokley*, 881 F.2d at 115–16. Similarly, in *Wilson* the court held that the defendant physically restrained the victim by holding a gun to her head as she drove her car, ordering her to pull over to the side of the road, and demanding that hand over all her money. *Wilson*, 198 F.3d at 469, 472.

The court finds this case distinguishable from both *Stokley* and *Wilson*. The victims in *Stokley* and *Wilson* were confined, and therefore essentially "locked up" in a small areas. *Wilson*, 198 F.3d at 472; *Stokley*, 881 F.2d at 115–16. In *Stokley*, the victim was physically forced into a bedroom and confined in that bedroom when the defendant blocked the only exit. *Stokley*, 881 F.2d at 115–16. The victim in *Wilson* was likewise confined, or "locked up," in a small area when the defendant held a gun to her head as she drove the car. *Wilson*, 198 F.3d at 472. The defendant here did point a gun at Mr. Gillespie and direct him to the floor, but the facts fail to demonstrate that Mr. Gillespie was confined in a small area. Moreover, the defendant stood over Mr. Gillespie for only a moment. " ... [C]ases holding that a defendant physically restrained his victims usually involve a *sustained focus* on the restrained person that lasts long enough for the *robber* to direct the victim into a room or order the victim to walk somewhere." *United States v. Parker*, 241 F.3d 1114, 1118 (9th Cir.2001) (emphasis in original). While the defendant did tell Mr. Gillespie that a boy was watching him from the hill, there is no evidence that Mr. Gillespie was in fact watched. The definition of "physical restraint" simply should not be stretched to encompass a vague threat that someone, outside of the victim's presence, is watching.

Other circuits faced with similar facts have concluded that the physical restraint enhancement does not apply when a defendant briefly holds a victim at gun point.

See *Parker*, 241 F.3d at 1118 (finding that the enhancement did not apply when a bank robber pointed a gun at a teller and shouted at her to get down on the floor); *United States v. Drew*, 200 F.3d 871, 880 (D.C.Cir.2000) (finding that the enhancement did not apply when husband forced his wife out of the bedroom and down the stairs at gun point); *United States v. Anglin*, 169 F.3d 154, 164 (2d Cir.1999) (finding that the enhancement did not apply when bank robber leveled gun at tellers and told them to get down on the floor). *But see United States v. Fisher*, 132 F.3d 1327, 1330 (10th Cir.1997) (finding that "physical restraint occurs whenever a victim is specifically prevented at gunpoint from moving, thereby facilitating the crime"). As noted by the Second Circuit in *Anglin*, displaying a gun and ordering a person down, without more, "is materially different from the Guidelines examples, each of which involves a restraint of movement by the use of some artifact by which the victim is 'tied' or 'bound' ... or by the use of a space where the victim is 'locked up'." *Anglin*, 169 F.3d at 164. "The required restraint must, as the language plainly recites, be physical." *Drew*, 200 F.3d at 880.

■ Additionally, the court is concerned that if pointing a gun at the victim and ordering the victim to the ground for a short period of time triggers the physical restraint enhancement in USSG § 2B3.1.(b)(4)(B), then the enhancement would apply to nearly all robberies. The Fourth Circuit has stated that "robbery encompasses many fact patterns. Robbery need not involve a physical holding, and one can envision various types of robberies involving no restraint at all." *United States v. Mikalajunas*, 936 F.2d 153, 156 (4th Cir.1991). Also, in *Wilson*, the

court said in dicta that it is possible to imagine car-jacking scenarios with no physical restraint. *Wilson,* 198 F.3d at 472 (arguing that an uncharged car-jacking where the defendant pointed a gun at a victim and ordered her out of her car did not involve physical restraint). Further, the commentary to § 2B3.1 states that "unlawful restraint *sometimes* occur[s] during a robbery." USSG § 2B3.1, comment. (backg'd) (emphasis added). Taken collectively these statements demonstrate that robberies *sometimes* occur without physical restraint. Robbery, by its nature as well as by definition, requires that the perpetrator threaten or assault the victim for the purpose of taking property. 18 U.S.C. §§ 2113, 2114. *Id.* Displaying a weapon and controlling the movement of the victim for a short period of time is most likely the least threatening manner in which the crime of robbery may be completed. "It is therefore likely that Congress meant for something more than briefly pointing a gun at a victim and commanding her once to get down to constitute physical restraint . . ." *Parker,* 241 F.3d at 1118–19. Accordingly, the court **FINDS** that the defendant did not physically restrain the victim in Count One. Therefore, the two level enhancement set forth in § 2B3.1.(b)(4)(B) does not apply to Count One.